### Josef Blazka v. State of Nebraska.

Filed July 14, 1920.   No. 21400.

1. **Homicide:** Information: Construction. In determining whether an information for murder contains all of the essential averments necessary to charge that crime, the information should be construed as a whole, and the language employed should be given its usual and well-understood meaning.

2. ———: ———: Sufficiency. When so construed, if the information fairly and with reasonable certainty charges the elements of the crime of murder, it will be held to be sufficient.

3. ———: ———: Construction. The word "so" in the information construed in connection with the context, and *held* to be the equivalent of the words, "by reason of the mortal wounds inflicted as aforesaid."

4. **Criminal Law:** Demonstrative Evidence. In a prosecution for murder, bloody garments and photographs of wounds upon the body of the victim are proper to be received in evidence, when sufficient foundation has been laid, where they tend to illustrate or make clear any controverted issue in the case.

5. **Information** examined, and *held* to sufficiently charge the crime of murder.

6. **Instructions** examined, and *held* not erroneous.

7. **Evidence** examined, and *held* to sustain the verdict and judgment.

Error to the district court for Cherry county: William H. Westover, Judge. *Affirmed.*

*Orville L. Jones* and *John T. Heffron,* for plaintiff in error.

*Clarence A. Davis, Attorney General,* and *John B. Barnes, contra.*

Day, J.

Josef Blazka, hereinafter designated the defendant, was convicted of murder in the second degree, in the district court for Cherry county, and sentenced to life im-

prisonment. He prosecutes error to this court, relying upon a number of assignments.

After the verdict and before sentence the defendant filed a motion in arrest of judgment, challenging the sufficiency of the information. This motion was overruled, and the ruling thereon is now assigned as error. The precise point raised by the motion and argued in the brief is that the information fails to charge that Franciska Blazka, the victim, hereinafter designated the decedent, died of the mortal wounds inflicted upon her. It is manifest that, if the information is subject to the criticism directed against it, it is fatally defective. One of the essential averments in an information for murder is a charge that the victim died of the wounds inflicted. The question involves an examination of the information. In the descriptive part of the information, it charges in apt and appropriate language, and in the usual form of informations for homicide, the venue, the date, March 5, 1919, the assault upon the decedent with deliberate and premeditated malice with the intent to kill and murder, the character of the weapon used, and the infliction upon the body of the decedent of "certain mortal wounds," which are specifically described, following which is the averment: "And did then and there so injure the said Franciska Blazka that she then and there became sick, sore and wounded and confined to her bed where she languished, and so languishing until the 11th day of March, 1919, did die, in said county and state."

As we view it, the whole question turns upon the meaning to be given to the word "so" as used in the latter part of the portion of the information above quoted. The word "so" is of very common use in good English, and has a wide and varied meaning, and the context has much to do with the thought conveyed by its use. The Century dictionary gives various meanings to the word "so," among them: "By this or that means;" "by virtue or because of this or that;" "for that rea-

son;" "in such a way as aforesaid." Webster's New International dictionary defines the word "so:" "As has been stated;" "for that reason;" "in such manner;" "often used with pronominal force to avoid repetition." Stripped of unnecessary verbiage, and reduced in part at least to its last analysis, and giving to the word "so" its pronominal meaning to avoid repetition, and transposing the words, the clause quoted would read: "And did then and there so (in the manner and by the means) injure the said Franciska Blazka that she became wounded, and 'so' (by reason of the mortal wounds inflicted as aforesaid) did die, on March 11, 1919, in said county and state." Such a construction does not, as we view it, do violence to the use of English or put a strained construction upon the words used. A charge that a person feloniously and of deliberate and premeditated malice assaulted a woman on a day named, and inflicted upon her mortal wounds, and did then and there so injure her that she languished and so languishing did die, would be understood in common parlance to charge that she died from those mortal wounds. Defendant so understood the charge against him, and was defended with that understanding.

Section 9050, Rev. St. 1913, provides: "No indictment shall be deemed invalid, nor shall the trial, judgment, or other proceedings be stayed, arrested or in any manner affected, * * * nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." While we do not consider this provision of the statute as obviating the necessity of essential averments in an information, still it may be regarded as legislative authority to place a liberal rather than a technical interpretation upon the meaning of the words used, and especially is that true when by so doing no prejudice results to the defendant in making his defense upon the merits. While it is necessary that an information for murder should aver all of the essential elements of the crime, the law does

not require that it should be laid in the best-chosen English, nor in the technical form approved by long-honored custom. It is sufficient if, from a fair and reasonable construction of the charge as a whole, giving to the language employed its usual and well-understood meaning in the light of the context, it appears that the essential averments of the crime are charged. There was a time in the history of criminal jurisprudence when the courts were justified in resorting to absolute exactness in pleading, and to extreme technicality in an effort to protect the individual in his life and liberty. Many of these technical rules grew up in times when what would be now regarded as trivial offenses were punishable with death. In the time of Blackstone 160 offenses were punishable with death. The accused was not permitted to testify in his own behalf; he was not permitted counsel in his defense in court; and many of the charges were prompted by religious or political passion. Happily that time has passed. The reason for the technical rule no longer exists, and the formalities and technical exactions should no longer be required.

It follows, from what has been said, that the information in this case, when construed as a whole, and giving to the language used its usual and well-understood meaning in the light of the context, sufficiently charges that the decedent came to her death by reason of the mortal wounds inflicted upon her. In this case there can be no possible doubt that defendant understood that he was charged with the murder of his wife, the decedent. Neither is there basis to believe that the so-called defects tended "to the prejudice of the substantial rights of the defendant upon the merits." In this discussion we have not overlooked *Hase v. State,* 74 Neb. 493, and cases cited therein. We do not consider the principle herein announced to run counter to that case.

After laying a sufficient foundation, the state, over objection of the defendant, was permitted to offer in evidence certain photographs of the body of the decedent,

showing numerous wounds of more or less severity. The photographs of the mangled corpse presented a gruesome spectacle, and it is urged that their introduction in evidence tended to arouse a feeling of prejudice, in the minds of the jury. The general rule is that photographs, proved to be correct representations of the person, place or things which they purport to represent, are competent evidence of anything of which it is competent and relevant for a witness to describe verbally. 16 C. J. 744, sec. 1528. In the present case it was incumbent on the state to show, not only that the wounds were inflicted by the defendant, but also that the decedent died of such wounds. Whether the wounds were sufficient to produce death was a strongly controverted issue. The size, character and number of the wounds, the severity of the beating, was a material inquiry, as bearing upon the issue as to whether death resulted from the wounds inflicted. The state was not required to stand alone upon the verbal description given by its witnesses upon this vital question of its case. It had the right, upon a sufficient foundation being laid, to support the oral testimony by demonstrative evidence, and the mere fact alone that the photographs presented a gruesome spectacle would not in itself be sufficient reason to exclude them. It is only when photographs do not illustrate or make clear some controverted issue of the case, and when they are of such a character as to be calculated to prejudice or influence the mind of the jury, that such evidence is not admissible. *Willis v. State,* 49 Tex. Cr. Rep. 139; *Franklin v. State,* 69 Ga. 36; *State v. Miller,* 43 Or. 325; *People v. Lee Nam Chin,* 166 Cal. 570; *People v. Elmore,* 167 Cal. 205; 2 Wigmore, Evidence, sec. 1157. As we view it, the photographs offered were material and competent evidence, as tending to support a material issue in the case, and were properly received in evidence.

As a part of the state's case, it offered in evidence certain bloody garments found upon the premises shortly

after the death of the decedent. These exhibits were ob-
jected to by the defendant as incompetent, irrelevant,
and immaterial, and not within any of the issues of the
case, and as tending to create a prejudice in the minds
of the jury. The objection was overruled and the gar-
ments admitted in evidence. Error is predicated upon
this ruling. There are many instances in which it is
proper that such articles of evidence should be received.
We conceive the rule to be that, when such evidence
tends to throw light upon or illustrate any controverted
issue of the case, then it is admissible. When, however,
it does not appear that the offered evidence would be
material to some inquiry in the case, such exhibits should
be excluded. In the cases of *McKay v. State,* 90 Neb. 63,
and *Flege v. State,* 93 Neb. 610, it was held that the
bloody garments offered in evidence by the state should
have been excluded, as they did not tend to elucidate any
issue in the case, and that the introduction of such evi-
dence would serve only to arouse the passions of the jury.
In each of these cases, however, there was no issue as to
the manner in which the deceased persons came to their
deaths, the only question being whether the accused com-
mitted the deed, and, the blood-stained garments shed-
ding no light upon this question, we think it was properly
held that they were inadmissible. In the instant case,
however, one of the issues was whether the decedent
died of the wounds inflicted upon her. Any evidence
of a probative character which tended to throw light up-
on or illustrate this issue was proper to be admitted.
The amount of blood found upon articles of clothing
might have some probative force in determining whether
the wounds were slight and inconsequential, or whether
they were severe. It frequently involves the exercise of
wise discretion to determine whether such evidence has
probative force, or whether its only purpose would be to
arouse resentment in the minds of the jury. We hold that
it was not error to receive the exhibits in evidence. For
cases illustrating this principle, see *State v. Jackett,* 85

Kan. 427; *State v. Moore,* 80 Kan. 233; *State v. Peterson,* 110 Ia. 647; 2 Wigmore, Evidence, sec. 1157; *Cole v. State,* 45 Tex. Cr. Rep. 225; *Christian v. State,* 46 Tex. Cr. Rep. 47; *Melton v. State,* 47 Tex. Cr. Rep. 451; *Lucas v. State,* 50 Tex. Cr. Rep. 219.

Criticism is made in the brief to errors occuring at the trial, among them, the introduction in evidence of a letter written by the defendant's son to his mother, and also to certain instructions given by the court, and applause by the spectators during the trial. We deem it unnecessary to go into a discussion of these criticisms. We have considered them, and in our opinion they are not sufficient to show prejudicial error. In the instructions the court clearly and carefully guarded the rights of the defendant, and submitted the theory of his defense to the jury.

Lastly, it is urged that the evidence does not support the verdict and judgment. We cannot, in this opinion, without unduly extending it, enter into a discussion of the evidence in detail, and must necessarily content ourselves with brief outlines and conclusions. There is no question but that defendant inflicted upon his wife a most cruel and brutal beating, using as a weapon a bit of harness tug about two inches wide and three-fourths of an inch in thickness, upon the end of which was an iron cockeye. In giving an account of the "whipping," as he termed it, the defendant claims that he used moderation, and that he did not strike his wife with the cockeye end of the tug; but from the frightful manner in which the body was cut and lacerated, and the skin and flesh beaten into a pulp in many places, it is very certain that it was not done with moderation, and more than probable that he struck her with the cockeye end of the tug. From the effect of this beating she was taken to her bed and five days thereafter died. The physician who testified in behalf of the state, and who made an autopsy and examination of the body, gave it as his opinion that the deceased died of the effect of the wounds, and while the

force of his testimony was somewhat weakened by the cross-examination, we are of the opinion there was ample testimony for the jury to conclude that she died of these wounds. The autopsy indicated that the vital organs were in a healthy condition, and that death did not ensue from disease. There was some testimony on behalf of the defense which suggests that the decedent might have died from strychnine poison, self-administered; the manner of her death indicates many of the characteristics of strychnine poison, but these questions were for the jury to pass upon, and were submitted under proper instructions.

From an examination of the entire record, from the facts clearly and undisputably established, and from the fair inferences to be drawn from such facts, we are clearly of the opinion that the testimony amply supports the verdict and judgment.

We find no prejudicial error which would warrant a reversal of the case.

JUDGMENT AFFIRMED.