[Crim. No. 1310.   Third Appellate District.—January 11, 1934.]

THE PEOPLE, Respondent, v. H. INDAR SINGH, Appellant.

S. Luke Howe, R. B. Hibbitt and O. F. Meldon for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant was charged with the murder of Kehar Singh. He was convicted of manslaughter. From the judgment which was rendered accordingly and from an order denying his motion for a new trial this appeal was perfected.

It is contended the evidence fails to support the judgment of conviction of manslaughter; that the court erred in its rulings admitting and rejecting evidence; and in giving and refusing certain instructions to the jury. It is also claimed

the prosecuting attorney was guilty of prejudicial misconduct in the course of the trial.

March 2, 1933, an affray occurred in an inn conducted by Hukam Singh at Walnut Grove between the defendant and Kehar Singh. There were several individuals present. All parties who were present belong to the Hindu race. About 8 o'clock in the evening Kehar sat upon a bench in the main room with other men. The defendant, who is a merchant, entered the room and accused Kehar of interfering with his sale of groceries. After some controversy over the matter, the defendant seized Kehar Singh and threw him to the floor, kicking and hitting him and finally crushing his chest with his knee. Kehar was apparently helpless and unable to resist the attack on account of the superior size and strength of the defendant. The prostrate man called for help. One of the bystanders attempted to remonstrate with the defendant, who threatened to shoot or administer bodily harm to him if he did not withdraw. He did so, and the defendant continued to crush the body of Kehar with his knee, saying, "I am going to kill you today." Kehar was beaten and crushed until he became unconscious. The defendant and one Dogar Singh then seized him by the arms and dragged his body into an adjacent room, where he was placed upon a mattress which lay upon the floor. The victim of the assault remained on this mattress until the following morning, when he was taken to a hospital and died that day. An autopsy disclosed the fact that he sustained three broken ribs and that his death resulted from hemorrhage of the liver and right lung, which were punctured.

The defendant was charged with murder and upon trial he was convicted of manslaughter. He contends that the affray was a mere wrestling match, and that the evidence does not show the deceased died from injuries sustained therein. The witnesses to the actual affray are all members of the Hindu race. The evidence is conflicting and irreconcilable.

There is adequate evidence to support the judgment of manslaughter. It appears that an affray occurred in which the defendant was the aggressor and in the course of which he violently beat, kicked and crushed the deceased with his knee while he lay helpless upon his back on the floor. The

evidence is undisputed that Kehar died as the result of fractured ribs and hemorrhage of the liver and right lung induced by traumatic force. There were no external incisions or abrasions of the flesh apparent upon the body of the deceased.

It is contended the court erred in admitting in evidence over the objection of the defendant, a photograph of the mattress upon which the body of Kehar was placed as it lay on the floor of a room adjacent to the kitchen, without first showing that the surrounding conditions which existed at the time his body was placed there, remained unchanged. The photograph was taken in that room of the Singh building two days after the body of the deceased was removed from the mattress. Partap Singh testified he saw the deceased lying upon the mattress in that room near the kitchen at 8 o'clock on the morning following the affray. He said: "I saw him in that place where he was laid in the evening, on the same mattress. . . . Then Indar Singh and Dogar Singh and I brought Kehar Singh from inside of the store and put Kehar Singh in the machine," and took him to the hospital. "Q. Is that the same mattress he was placed on the night before and where you had seen him the same morning a few minutes before? A. Yes, the same mattress of the night before." Fateh Singh sufficiently identified the photograph as a picture of the mattress upon which the deceased was placed after the affray. He said in response to the question, "Does that picture resemble the mattress that was in the adjoining room to the kitchen in Hukam Singh's place March 2, 1933? A. Yes, I think it looks like that." There is no evidence to the contrary. The photograph was not offered to show the condition of the room or its contents, other than the mattress. It was merely offered as a corroborating circumstance to show that the deceased was seriously hurt and that the room contained a mattress upon which his body was placed. There can be little doubt of that fact. Partap Singh saw him lying on a mattress in that very room the morning following the affray. The preliminary proof identifying the mattress was a matter for the trial judge to pass upon. His province to determine the weight of that preliminary proof will not be disturbed on appeal, except for an abuse thereof. (*Diller* v. *Northern Cal. Power Co.*, 162 Cal. 531, 538 [123 Pac. 359, Ann. Cas.

1913D, 908].) The photograph which was taken two days after the removal of the body of the deceased was competent to indicate the presence and appearance of the mattress. The evidence was not too remote. (*People* v. *Grill*, 151 Cal. 592, 598 [91 Pac. 515]; *People* v. *Singh*, 78 Cal. App. 476, 483 [248 Pac. 981]; 3 Jones on Evidence, 2d ed., p. 2577, sec. 1418.) It is immaterial that the photograph was of slight value as evidence in the case. The weight of the evidence was a matter for the jury to determine. The fact that there was a conflict of evidence regarding the placing of the deceased upon the mattress in the room adjoining the kitchen is addressed solely to the weight of the evidence. The consideration of that conflict was a problem for the trial judge to determine upon the offer to introduce the photograph in evidence. The admission of the photograph in evidence was not erroneous.

■ It is contended the court erred in permitting the prosecution to develop on cross-examination of the defendant the fact that he had previously stated to an officer that he was not present at the place of business of Hukam Singh in Walnut Grove on the evening of March 2, 1933, and knew nothing of the conflict which took place then and there, and that he had no information regarding the cause of the injuries which were received by Kehar Singh. It is asserted this cross-examination was prejudicial, since upon the trial of the cause the defendant freely admitted he was in Hukam Singh's place of business the night of the affray and testified to his version of the affair.

The cross-examination of the defendant was harmless for the reason that the defendant subsequently voluntarily testified to the same statements which he had previously made to the officer, and explained his reasons for doing so by saying: "I didn't like to get mixed. I said Kehar Singh was dead and they may not hold me for any complications. Q. You didn't want to get mixed up in it, is that what you mean? A. Yes." Moreover, before the defendant took the stand in his own behalf, the officer to whom the false statements were made was permitted, without objection, to fully recite the circumstances and purport of that conversation, in the course of which the defendant said, "No, I wasn't there. I was peddling my groceries and came back [to my place of business] that evening to work on my books."

Another witness who was present and heard this conversation, was previously permitted to testify, without objection, that the defendant first denied having any knowledge of the affray in which Kehar Singh was injured, and explained his serious condition by saying, "I think he is like one of my countrymen, maybe he got drunk and got hurt."

The alleged false declarations of the defendant were properly admitted in evidence to show his guilty knowledge of the cause of the injuries which resulted in the death of Kehar Singh. (*People* v. *Peete,* 54 Cal. App. 333, 353 [202 Pac. 51]; *People* v. *Sampsell,* 104 Cal. App. 431, 441 [286 Pac. 434]; *People* v. *Yeager,* 194 Cal. 452, 486 [229 Pac. 40]; *People* v. *Cuff,* 123 Cal. 589 [55 Pac. 407]; 8 Cal. Jur., p. 42, sec. 157.)

The defendant having previously developed on cross-examination the same statements and having voluntarily admitted at the trial that he had previously made these false statements, waived his right to object to this evidence and may not predicate a claim of reversible error thereon, for the reason that it became cumulative and harmless. (*People* v. *Correa,* 44 Cal. App. 634, 642 [186 Pac. 1055]; *People* v. *Frank,* 75 Cal. App. 74 [241 Pac. 924]; 8 Cal. Jur., p. 502, sec. 516; 16 Cor. Jur., p. 550, sec. 1059.)

The admission of certain testimony by Dr. Frank W. Lee is assigned as erroneous. The doctor was asked: "Q. Did you in the presence of the defendant, Indar Singh, ask Mr. Baines— . . . What did you ask there . . . ? A. Asked how this occurred. . . . Q. And Mr. Baines replied? A. That the injured had been drunk and that there had possibly been a quarrel or accident. He was rather noncommittal in this statement." On motion of counsel for the defendant to "strike out the answer of the witness that 'He was rather noncommittal' as a conclusion" that portion of the answer was stricken from the record. Since the defendant was not then accused of committing the assault which caused the injuries from which Kehar was then suffering, it may be questionable as to whether the defendant was called upon to refute the statement of Mr. Baines which was made in his presence that Kehar was suffering from the effect of injuries received in "a quarrel or accident". There was, however, no motion to strike out that portion of

the answer. It was harmless. It does not constitute reversible error under the circumstances of this case.

In describing the injuries sustained by the deceased, the doctor said there were no external abrasions. On cross-examination evidence was elicited to the effect that the ribs of the deceased might have been fractured by his having been run over by a truck. On redirect examination, over the defendant's objection, the doctor was permitted to testify that the fact that the deceased had his clothing on, might account for the absence of exterior abrasions of the body. He said in that regard: "I feel the clothes would act as a cushion." It is contended this reply constituted nonexpert testimony which was incompetent. There is no merit in this assignment of error. It is a mere matter of common knowledge that the presence of clothing will tend to prevent abrasions of the skin as a result of a blow or of violent crushing by means of a knee. No evidence was necessary to establish that fact. Jurors will be presumed to know what everybody of ordinary intelligence ought to know. Conceding that expert testimony of facts which amounts to common knowledge is ordinarily inadmissible, this evidence is harmless.

In response to a question propounded to Dr. McDonnell by the defendant's attorney, regarding the character of the injuries which were sustained by the deceased, this colloquy occurred: "Q. Doctor, that is more like he had been run over by an automobile, rather than to have been kicked or struck by some instrument? A. Well, it was in my opinion, that it was some heavy or more direct pressure, because the ribs,—three of the ribs that were fractured, had been pushed in, and had punctured the lung." At the trial, without objection, Dr. Lee was permitted to testify that he agreed with the foregoing statement of Dr. McDonnell. Continuing the same inquiry regarding the cause of injury, Dr. Lee, who had made a professional examination of the body of the deceased, over the objection of the defendant's counsel, in response to the question, "If an automobile had run over the deceased, would just the right side have been affected, or would you have found other conditions in the body, to indicate such condition?" replied, "That is my opinion." This appears to have been a legitimate subject of inquiry from a medical expert. The reply may also

have involved a fact which is merely common knowledge. Common sense would teach any person of ordinary intelligence that that was true. The question may be argumentative, but it was not objected to on that ground. The reply is also harmless and does not constitute reversible error.

█ It did not constitute error to permit the doctor to assent to the inquiry, "Is it very easy or convenient to definitely determine the extent of the fractured ribs without an X-ray?" █ Nor was it erroneous to permit the witness Fateh Singh to answer the following question propounded to him by the prosecution, to wit: "How long had you been in jail at that time?" This question was competent as one of the surrounding circumstances under which the witness charged the defendant with attempting to bribe him to refrain from testifying at the trial regarding the affray. Fateh Singh was present at the time of the assault upon the deceased. He had been detained in the county jail at Sacramento as a witness in this case. He had previously testified that the defendant visited him prior to the trial, and said to him, "Do not be a witness, . . . I give you two hundred dollars and do not make any statements. . . . I will arrange a bail for you." It appears the witness was released on bond a few days later. The question "How long had you been in jail at that time", was therefore competent.

█ The court did not err in sustaining an objection to the question propounded to the witness Fateh Singh, "Now, where did you have that one drink, one dram of whisky?" The witness had previously admitted that he had one drink of liquor at the place where the assault occurred. The question to which the objection was sustained was asked in an apparent effort to prove that the witness was drunk and did not recollect just what did occur at the time of the affray. Without objection the following colloquy subsequently occurred and it fully covers the subject in controversy: "Q. You told me you had that dram of whisky to drink *at Hukam's place,* is that correct? A. Just one. Q. Well, was that a week later? A. Yes." With that reply, the subject of his drunkenness at the time of the affray was dropped. The challenged ruling does not constitute error. It is fully covered by the subsequent answers of the witness which were elicited without objection.

■ There was no error in denying defendant's motion to strike out the statement made by the defendant to Partap Singh when they were about to take the injured man, Kehar, in an automobile, to the Sacramento hospital the following morning. As they were about ready to start, the defendant addressed himself to this witness, saying, "You better come on and get inside the machine, too." We are not informed as to why this was prejudicial. It appears to be irrelevant and harmless. It does not constitute error.

■ It was not error for the prosecution to refuse to submit for inspection to a witness for the defendant an unsigned, unapproved and extrajudicial typewritten report made by the court reporter of statements which were contradictory of his testimony given at the trial. This record was referred to in an effort to impeach the witness under the provisions of section 2052 of the Code of Civil Procedure. Nor was it error for the court to refuse to compel the prosecution to submit the document to the defendant's attorney for inspection. (*People* v. *Glaze,* 139 Cal. 154 [72 Pac. 965]; *People* v. *Haughey,* 79 Cal. App. 541 [250 Pac. 406]; *People* v. *Casey,* 79 Cal. App. 295 [249 Pac. 525]; *People* v. *Keyes,* 103 Cal. App. 624, 638 [284 Pac. 1096]; *People* v. *Meadows,* 108 Cal. App. 67 [291 Pac. 226].)

■ It has been repeatedly held that such extrajudicial statements made by a third party without the signature or approval of the witness are not themselves competent evidence with which to impeach him, and that the language of section 2052, *supra,* to the effect that "If the statements be in writing, they must be shown to the witness before any question is put to him concerning them," is confined to statements made in writing by the witness himself, or signed or approved by him or such as are officially taken in regular court proceedings. ■ In seeking to impeach a witness by proving that he has made contradictory statements at other times, pursuant to section 2052, *supra,* there is no objection to counsel referring to a written memorandum, under the circumstances of this case, for the purpose of accuracy or to refresh one's memory, without first submitting the document to the inspection of the witness or his attorney. This is particularly true when the witness denies the accuracy of the statement, as he did in the present case. In response to the question, "You did not make that state-

ment?'' the witness replied, ''No.'' Moreover, the witness was subsequently given the opportunity to read that portion of the typewritten statement which was involved in the impeaching question. · The district attorney said in that regard, ''I will let you read this part of it, right here is where I want to begin with,—Was this question asked you, and did you make this reply?'' It does not appear that any specific impeaching question and answer contained in the document was asked of the witness without giving him the privilege of reading it if he so desired. There was no error in the proceedings in that regard.

■ The appellant has assigned as error the refusal to give to the jury the following instruction, to wit: ''The court instructs the jury that matters of fact, if any, which are left uncertain by the evidence, cannot be made certain to the prejudice of the defendant by inference. In the absence of evidence, no inference can be drawn by the jury against this defendant.'' The refusal of the foregoing instruction does not constitute error. It was fully covered by other instructions favorable to the defendant which were given in the court's charge. The jury was clearly instructed that ''Every fact and circumstance . . . must be viewed by you in the light of the presumption of innocence.'' The jury was·further charged that ''The defendant is presumed to be innocent until his guilt is established by such evidence as will exclude every reasonable doubt.'' Again, the court informed the jury that ''You are to take into consideration only such evidence as has been admitted by the court, and you should disregard and discard from your minds every impression or idea suggested by questions . . . to which objections were sustained.'' Also the jury was instructed that all inferences which may be reasonably drawn from the evidence must be reconciled if possible in favor of the defendant's innocence. In an elaborate charge, the defendant was protected by numerous instructions warning the jury against indulging in any presumption or inference against the accused which could be reasonably reconciled in favor of his innocence. The defendant may not complain of any· omission or error in the charge on that ground.

■ There was no error in giving to the jury the following instruction: ''Duly qualified experts may give their opinions on questions in controversy at the trial. To assist

the jury in deciding such questions, the jury may consider the opinion with the reasons stated therefor, if any, by the expert who gives the opinion. The jury is not bound to accept the opinion of any expert as conclusive, but should give to it the weight to which they shall find it to be entitled. The jury may, however, disregard any such opinion, if it shall be found by them to be unreasonable.''

The foregoing instruction appears to be a correct declaration of the law. It clearly informs the jury that they are not bound by the opinion of an expert witness, but, upon the contrary, that they should give it such weight as it appears to be entitled to under the circumstances of this case. This is the rule uniformly accepted as the law in California. (*State Compensation Ins. Fund* v. *Industrial Acc. Com.*, 195 Cal. 174, 184 [231 Pac. 996]; *Waizman* v. *Black*, 101 Cal. App. 610 [281 Pac. 1087]; 10 Cal. Jur., p. 971, sec. 228; 22 C. J., p. 728, sec. 823.)

██ Several remarks of the district attorney which were addressed to witnesses and to counsel for the defendant in the course of the trial are assigned as prejudicial misconduct. We have examined the record with respect to each of these challenged remarks. We are frank to concede they do not indicate that calm, judicious dignity which characterizes the ideal proceeding in court. Several of the objectionable statements were uttered as impulsive retorts to equally objectionable remarks of adverse counsel. Without doubt such conduct is incompatible with the due decorum and dignity which should prevail in the trial of a case. The challenged remarks would better have been omitted. Too frequently the trial of a criminal case resolves itself into a contest of wits and sarcasm between opposing counsel, for an effect upon the jury. We also realize that in the zeal and fidelity for one's cause, indiscreet things may be impulsively said in the course of a hotly contested case, which are unwarranted. It seems unreasonable to assume that intelligent jurors would not appreciate the provocation and circumstances under which such statements are usually uttered and make due allowance for the extravagance of the language employed. The mere sarcastic or extravagant statements of a prosecuting officer in the midst of a hotly contested trial are insufficient upon which to reverse a judgment of conviction, in the absence of a showing of prejudice.

(*People* v. *Bennett,* 79 Cal. App. 76, 95 [249 Pac. 20].) We are convinced the challenged remarks of the district attorney do not constitute reversible error.

Finally, it is insisted the district attorney was guilty of prejudicial misconduct by referring in his argument to the jury to the mattress upon which the body of the deceased was placed after the affray by saying, "Hukam Singh denied [the mattress] was there; it never was there, he said, that he never had a mattress in the place, the side room where the mattress was found with the blood of Kehar Singh on it,—". Upon interruption of the district attorney at this point, and motion to strike out the remark and instruct the jury to disregard it as unsupported by the evidence, the court said: "The jury are instructed to disregard the statement of counsel that blood was on the mattress." The district attorney thereupon stated to the jury that they were to be governed by their own recollection of the evidence, and that if he had inadvertently made an error in attempting to quote the evidence they should not accept his statement thereof.

This erroneous statement regarding the presence of blood on the mattress, does not constitute reversible error. The jury was clearly instructed to disregard it. The jurors must have assumed they were not entitled to take into consideration the statement that the mattress contained bloodstains from the person of the deceased. Moreover, the presence of blood on the mattress does not seem to be such a violent inference from the fact that the injured man's ribs were violently fractured and that he suffered from internal hemorrhage of the liver and right lung, and lay in that condition upon the mattress for nearly twelve hours. Under such circumstances, a hemorrhage from the mouth would be likely to follow, leaving bloodstains on the mattress. An attorney is entitled to argue to the jury any inference which may be reasonably deduced from the evidence.

Upon an examination of the entire record we are convinced there was no miscarriage of justice in finding the defendant guilty of manslaughter.

The judgment and the order are affirmed.

Pullen, P. J., and Plummer, J., concurred.