263 P.2d 282

STATE v. JOHNSON et al.
No. 5558.

Supreme Court of New Mexico.
Aug. 12, 1953.

Rehearing Denied Dec. 1, 1953.

O. O. Askren, Roswell, Easley & Quinn, Hobbs, for appellants.

Richard H. Robinson, Atty. Gen., William J. Torrington, Asst. Atty. Gen. and Fred M. Standley, Asst. Atty. Gen., for appellee.

COMPTON, Justice.

Appellants appeal from a conviction of murder in the first degree. The offense was committed in Hobbs, Lea County, and, thereafter, the venue was changed to Chaves County. The jury specified the death penalty for Arthur Fay Johnson and life imprisonment in the penitentiary for Lucille Johnson.

On the morning of March 6, 1951, William Cabrel, a construction worker, failed to report for work. That evening his landlord was contacted and it was found he had paid his rent and nothing was said by him about his intention to move. Upon examining his room, an unsigned note reading "leaving for sunny California" was found on a table. His pickup truck and also certain wearing apparel were missing. The Cabrels lived near Estancia and his wife was contacted there in an effort to learn his whereabouts. Mrs. Cabrel informed the officials that her husband had left Estancia for Hobbs on February 26, previously, and at the time was carrying on his person currency between $600 and $700; that he carried his money in two billfolds. However, in one of the billfolds he carried just small amounts, sufficient to make change and for current expenses. About the same time it was learned the appellants, acquaintances of Cabrel, had also left Hobbs. Piecing these events together, the officers were alerted and a "missing person" report was sent out. Facts leading to arrests developed in rapid succession. The pickup was found abandoned in Blythe, California. Near the same time an express package was sent from Blythe, California and consigned to Arthur Johnson at Oklahoma City, Oklahoma. On March 19, a Texas rancher, while riding his range, noticed a barrel or oil drum in his pasture. Beneath the barrel there were signs the ground had been dug up or in some manner disturbed. His son, who was riding with him, was called to the scene. Their dogs began to dig about the

barrel and a piece of cloth was dug up. Dismounting, the son caught hold of the cloth and giving a pull, a hand and arm came up. The officers exhumed the body of a man fully clothed except shoes. His belt was buckled and his trousers and shirt were buttoned, except possibly the collar button. His wife immediately identified the body as that of her husband, William Cabrel. The officials left immediately for Oklahoma City and they found that appellants were there. They intercepted the package at the express office and it contained Cabrel's billfolds, with the money gone. On March 21, after locating the place appellants were staying, their room was raided and their arrest followed. In their room was found Cabrel's suitcase and various articles of clothing, a watch and clock, admittedly the property of Cabrel.

Appellant, Arthur Fay Johnson, readily admitted killing the deceased, burying his body in Texas, taking the pickup truck, and leaving for California, with his wife and two small children. Seeking to justify his acts, he made a statement substantially as follows: During his absence on the evening of March 5, 1951, Cabrel came to his home, jerked open the door which had been latched from within and violated the sanctity of his home. When he returned home, he found his wife lying unconscious on the floor, with her clothing about her head, blood upon the floor and upon her clothing, indicating she had been criminally assaulted. As he entered his home, his 7½ year old step-daughter was calling him to come and get her; that Cabrel was lying on the bed "fingering" the little girl. He first put cold towels on his wife's head to bring her to, after which he said to Cabrel, "What the hell going on here"; that Cabrel replied, "I have jazzed your old lady and I am going to jazz these little girls and you too"; by that time Cabrel was in a standing position and reached for his pocket; whereupon, he struck him one blow on the head with a rock door stop; that Cabrel fell back upon the bed and as he attempted to get up a second time, he struck him several blows with the door stop until he was quiet. He took him outside and put him in Cabrel's pickup which was nearby, thinking he would recover from the assault and go home. He made several trips to the pickup to learn his condition. About 11:00 P. M. he went out to see about him and found him dead. The question then arose what to do with the body, and he decided to bury it. Before doing so, he returned to his house, told his wife Cabrel was dead and he was going to take him away but his wife made no reply to his remarks. He took the body into Texas and buried it, where it was found as previously noted. That he disposed of the body in such manner was because he felt his past record would discredit his story. After burying the body, he returned to Cabrel's home and took the personal

articles above enumerated. He then went to his home and got his wife and children and left for California. He admitted finding some $3 in change in the bed of the pickup, which presumedly fell out of Cabrel's pockets, which he says he gave to the little girls as souvenirs.

Lucille Johnson corroborated his statement that Cabrel came to their home and assaulted her but asserts she immediately lost consciousness and did not remember anything that followed until she was told that they were leaving for California, and that only faintly. The jury disbelieved their story and found them guilty as charged.

 We will first dispose of the appeal as it concerns appellant, Arthur Fay Johnson. For a reversal, he relies on fundamental error. The information charged the appellants with the murder of William Cabrel. It also contains separate allegations that the appellant, Arthur Fay Johnson, had theretofore been convicted of six separate felonies, listing them. The inclusion of allegations of prior convictions and their admission in evidence, though without objections, is the basis of his claim of fundamental error. We are mindful of the provision of § 42–625, 1941 Comp., providing that prior convictions shall not be alleged unless such allegation is necessary to charge the offense under § 42–607 of the Statute. Nevertheless, the purpose

of the rule is the protection of an accused, and its violation cannot be sustained as error in the absence of a showing of injury or prejudice. The record in this regard is clear. In chambers and before the trial began, appellant and his attorney announced that they wished to enter a plea of guilty to the charge of prior convictions. The plea was accepted in the absence of the jury and then only after the court had admonished appellant that he was entitled to a hearing before a jury as to the truth of any one or all of the allegations. The state submitted its case to the jury on the charge of murder only. At no time before the state rested was reference made to prior convictions, nor did appellant at any time object to the inclusion of the allegations of prior convictions. Obviously, thus far appellant was not injured or prejudiced in any manner.

The appellant took the stand in his own behalf and it is from his lips the jury first heard his own amazing criminal record, possibly unparalled, of which he now complains. Beginning in 1919 and ending with his conviction in 1936, he committed all told fourteen felonies, served prison terms therefor in eight instances, six running concurrently. Not only did he voluntarily relate the six felonies alleged in the information but an additional eight. After appellant related the facts leading up to his conviction on each of the fourteen felony charges, the court admitted in evi-

dence authenticated judgments of the prior convictions as alleged. The doctrine of fundamental error has no place in the case.

When appellants were arrested in Oklahoma City, a pistol was found under some clothing lying on the floor. The arresting officer asked him where he got the gun and he replied he got it the previous night in a house burglary. This testimony also is made the basis of fundamental error. Fundamental rights have not been invaded and the inherent powers of the court are never to be exercised in aid of strictly legal or technical claims. State v. Sanders, 54 N.M. 369, 225 P.2d 150; State v. Garcia, 19 N.M. 414, 143 P. 1012. Appellant was ably represented by counsel and the question was asked and the answer given without objection. At no time did he move to strike the testimony or withdraw it from the jury. It went unnoticed until after verdict.

It is argued that the court erred in the admission of certain photographs. The photographs show the scalp had been removed from the skull of the deceased, exposing fractures of the skull and certain fleshy part of the head and shoulders of the deceased. The objection made is that the pictures are so gruesome and inflammatory, the minds of the jurors were prejudiced thereby. We do not so appraise them. While the doctor testified in terms descriptive of the wounds, the photographs gave the jury a visual explanation of his testimony. It must be remembered that appellant was standing on his plea of not guilty when the photographs were admitted. The state was put to the task of proving the essential elements of the crime. Whether the deceased was fatally injured was an issue to be determined by the jury. The extent and nature of the wound and the atrocity of the crime also were material questions. Clearly, the photographs, though cumulative, served to corroborate the doctor's testimony and were admissible for that purpose. State v. Horton, our recent case, 57 N.M. 257, 258 P.2d 371; Janovich v. State, 32 Ariz. 175, 256 P. 359. The admission of photographs rests largely in the discretion of the trial court and ordinarily his decision will not be disturbed. We cannot say the court abused its discretion.

Concerning the admissibility of photographs, the courts are in accord with the conclusion reached. We quote:

"Photographs are the pictured expressions of data observed by a witness. They are often more accurate than any description by words, and give a clearer comprehension of the physical facts than can be obtained from the testimony of witnesses. Ordinarily photographs are competent evidence of anything which it is competent

for a witness to describe in words. Mc-Candless v. Commonwealth, 170 Ky. 301, 185 S.W. 1100; Blazka v. State, 105 Neb. 13, 178 N.W. 832. Their admissibility does not depend upon whether the objects they portray could be described in words, but on whether it would be helpful to permit the witness to supplement his description by their use. State v. Mannion, 82 N.H. 518, 136 A. 358. They are not inadmissible merely because they bring vividly to the jurors the details of a shocking crime or tend to arouse passion or prejudice. Moya v. People, 88 Colo. 139, 293 P. 335; People v. Balestieri, 23 Cal.App. 708, 139 P. 821. It is only when photographs do not illustrate or make clear some issue of the case, and when they are of such a character as to prejudice the jury, that they are not admissible. Blazka v. State, supra. The fact that the photographic evidence may be cumulative is not alone ground for its rejection; its admission rests largely in the discretion of the trial judge and his decision will not be disturbed on review unless an abuse of discretion is shown. People v. Singh, 136 Cal.App. 233, 28 P.2d 416.

" * * * It can not reasonably be contended that the district attorney did not properly establish by testimony the facts of the discovery of the body and its condition. such facts, being relevant and admissible by means of verbal portrayal, are equally relevant and admissible by means of photo-graphic portrayal." Potts v. People, 114 Colo. 253, 158 P.2d 739, 740, 159 A.L.R. 1410.

"A photograph of the bedroom showing the blackened walls and the burned bed-clothes, with the bed and the burned body of defendant's wife, taken on January 9th, shortly after the murder, was admitted in evidence over the objections of the defense. It is insisted that the photograph was inadmissible and that the sole purpose of its introduction was to arouse the prejudice and inflame the passions of the jury. The photograph in this instance was not inadmissible, though it was only a repetition of what had been described verbally by the physician and by the officers; it may not have conveyed any information which had not already been given to the jury, but that would not be a reason for its exclusion. Photographs are generally admitted for the same reason that maps and diagrams in illustration or explanation of the testimony are admitted. Blake v. Harding, 54 Utah 158, 180 P. 172; Johnson v. [Union Pac.] Railroad Co., 35 Utah 285, 100 P. 390; State v. Casey, [108 Or. 386] 213 P. 771 [217 P. 632]; Tillman v. State, 112 Ark. 236, 166 S.W. 582. The fact that the picture of the dead woman was gruesome presents no valid objection to its admission." State v. Woods, 62 Utah 397, 220 P. 215, 220.

"There is no doubt that the photograph is clearer and more understandable evidence than oral testimony. That it was cumulative does not affect its materiality." State v. Nelson, 162 Or. 430, 92 P.2d 182, 192.

The conviction of Arthur Fay Johnson should stand.

■■ The ground urged for a reversal by appellant, Lucille Johnson, is that the verdict of the jury upon which the judgment was entered, was not supported by substantial evidence. It therefore becomes necessary to review the evidence further. The case against her is entirely circumstantial and to warrant a conviction the evidence must point unerringly to her guilt. The circumstances implicating her with the commission of the crime are substantially as follows: She knew the deceased and on one occasion she and her husband had ridden with him in his pickup. On the morning of the homicide, between 8:30 and 9:00 A. M., the two appellants and their daughters went to the home of the deceased. Lucille Johnson jerked open the door and said, "Yes, he still lives here". She and the children went inside for a very brief period, her husband remaining outside, but the four left immediately. On March 5, the evening they left Hobbs, Lucy Johnson, her 7½ year old daughter by a former marriage, had been playing with neighbor children. As she returned home, the evidence discloses the following:

"Q. What happened when you got to the door? A. Mother said I was to go get in the car.

"Q. Did you get inside the house? A. No, sir.

"Q. Did your mother go with you then? A. Yes, sir.

"Q. Where did you go? A. We got in the car.

"Q. Did you ask anything about the car? A. I said, 'What car?', and she said, 'this one', and I said, 'that is not ours'.

"Q. What did she say then? A. She said, 'Well, it is now'.

"Q. Did she get in the car with you and Alice? A. Yes, sir.

"Q. Then what happened? A. Then I heard a bump.

"Q. Where? A. In the back of the car, I believe.

"Q. Did you start to look in the back? A. Yes, sir.

"Q. Then what happened? A. She said to sit down."

The arresting officer testified concerning statements made by appellant in Oklahoma City, as follows:

"Q. What did you do then after you got this gun? A. Arthur Johnson told me he was the man I wanted and there was no use taking his wife. Mrs. Johnson at the time was in the southeast corner of the room and she said, 'I have not done anything except what he told me * * *.'"

We do not think the evidence against her is substantial. Too much is left to surmise and speculation. There is no evidence in the record of a common purpose or design to take the life of Cabrel. It is true there is sufficient evidence to warrant a jury in believing that she knew that Cabrel had been killed by Arthur Fay Johnson. But we cannot construe this as substantial evidence that she was present, aiding and abetting the commission of the crime. Mere presence in the absence of outward manifestation is insufficient. State v. Ochoa, 41 N.M. 589, 72 P.2d 609; State v. Wilson, 39 N.M. 284, 46 P.2d 57; State v. Lord, 42 N.M. 638, 84 P.2d 80; State v. Hernandez, 36 N.M. 35, 7 P.2d 930.

The judgment will be affirmed as to appellant, Arthur Fay Johnson, and reversed as to appellant, Lucille Johnson, with direction to discharge her. And it is so ordered.

McGHEE, LUJAN, and SEYMOUR, JJ., and JOHN R. BRAND, District Judge, concur.

SADLER, C. J., not participating.