469 P.2d 153

STATE of New Mexico, Plaintiff-Appellee,

v.

James Arthur WEBB, Defendant-Appellant.

No. 419.

Court of Appeals of New Mexico.

April 24, 1970.

Robert H. McBride, Albuquerque, for defendant-appellant.

James A. Maloney, Atty. Gen., Santa Fe, Robert J. Young, Asst. Atty. Gen., for plaintiff-appellee.

## OPINION

OMAN, Judge.

Defendant has appealed from his conviction of aggravated battery contrary to the provisions of § 40A–3–5, N.M.S.A.1953 (Repl. 6). We affirm.

Briefly, the facts are that defendant, twenty years of age at the time of the commission of the offense on March 6, 1969, and an acquaintance of his by the name of Frakes, nineteen years of age, were hitch-hiking from Los Angeles, California, to Mason City, Iowa. They were given a ride from Ludlow, California, to Albuquerque, New Mexico, by a Mr. Olafson. They were planning to continue riding with Mr. Olafson from Albuquerque to Oklahoma City, Oklahoma. They arrived in Albuquerque in the late afternoon of March

5, and Mr. Olafson rented accommodations at a motel.

After Mr. Olafson had gone to bed, the two young men went for a cup of coffee. They returned to the motel at about 2:00 a. m. They had decided to take Mr. Olafson's money and automobile, but were concerned that he might awaken and notify the police before they could get out of New Mexico. They decided they must "* * * knock him out to give [them] time to get across the state line before he could get to a telephone and call the police. * * *" Frakes remembered seeing a claw hammer in the automobile. He got the hammer, and, according to him, defendant then struck Mr. Olafson in the head with it. Mr. Olafson was bleeding profusely, and Frakes became alarmed and insisted that they should take him to a hospital.

According to defendant's statement to the police, to which reference will hereinafter be made, he and Frakes tossed a coin to see who would strike Mr. Olafson with the hammer. Frakes lost the toss and thereupon struck Mr. Olafson. They then went into an adjoining room, and shortly thereafter heard Mr. Olafson call, "* * * boys, boys, somebody has hit me. * * *" They then became frightened and took him to a hospital. Frakes disposed of the hammer by dropping it in a trash container at the hospital.

Two police officers happened to be at the hospital investigating another case. The young men had brief conversations with these police officers. In these conversations they identified themselves and told the officers they had come from Los Angeles with Mr. Olafson. They later went with one of the officers to the motel. On entering the bedroom which had been occupied by Mr. Olafson, the officer observed blood on a pillow and other bed clothes, spots of blood on the walls in the area of the bed, and blood on the floor of the bathroom and the lavatory. This officer later returned to the motel and had photographs made of the bedroom and bathroom showing the blood and the conditions of the rooms.

The officer, being new on the police force, was at a loss to account for the injuries to Mr. Olafson, since he was a stranger in the city, apparently nothing had been taken from his person or the room, there was no evidence the room had been forceably entered, and the two persons who were with him had taken him to the hospital. The officer thereupon called his superior for directions, and was told to bring the two young men to the police station. They were not arrested, and they appeared to be very cooperative and wanted to help. In fact, defendant testified at his trial that he was cooperating with the officer, because he was "* * * anxious to get this matter disposed of and straightened out, * * *."

They arrived at the police station at about 3:15 a. m. They were advised of their constitutional rights and then questioned together and separately. Defendant denied having had anything to do with injuring Mr. Olafson. His story was that he and Frakes had gone out for coffee, and upon their return to the motel had found Mr. Olafson in his injured condition.

Defendant was next questioned at about 8:30 or 8:45 the same morning. The officer who did this questioning first read to defendant the Miranda warnings from an Advice of Rights Form and checked each warning as it was read. On the form, immediately below the written warnings, are the following questions:

"6. Do you understand what I have told you?

"7. Do you want to go ahead and talk to me about this matter?"

Defendant answered in the affirmative to each of these questions, and his answers were so recorded on the form. The Advice of Rights Form was then handed to defendant, who read and signed it. He then told the officer his version of what he and Frakes had done to Mr. Olafson.

Defendant relies upon four points for reversal. We shall answer these points in the order of their presentation in the briefs.

He first contends any statements made by him to the police should have been suppressed, because he was not adequately advised of his rights. The evidence as to when and what he said to the officers is outlined above. It is true defendant and Frakes talked with the police officers briefly at the hospital and also with the one officer at the motel prior to receiving any warning as to their rights. However, at this stage they were disclaiming knowledge of what had happened to the victim; were expressing a desire and willingness to assist the police; were not being accused by the police of any wrong; and were not in custody. Immediately upon their arrival at the police station, and prior to being questioned, they were advised of their rights, and, as above stated, defendant denied any connection with the attack on the victim. Before defendant was next questioned, he was again advised of his rights and signed the Advice of Rights Form to which reference is above made. Defendant relies upon Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Michael, 103 Ariz. 46, 436 P.2d 595 (1968); State v. Saunders, 102 Ariz. 565, 435 P.2d 39 (1967); State v. Anderson, 102 Ariz. 295, 428 P.2d 672 (1967).

Although we may not entirely agree with the Arizona decisions, nothing stated therein, and nothing stated in the Orozco or Miranda decisions requires a reversal under the facts in this case. There is nothing in this case to indicate defendant and Frakes were even under suspicion prior to being asked to go to the police station. They were not in custody or otherwise deprived of their freedom in any significant way at any time prior thereto. Even if being asked to go to the police station and to accompany the officer there can be said to be a deprivation of their freedom in a significant way, which we need not decide, still the decisions in the foregoing cited cases could not be applicable here. The record fails to indicate anything was said by either defendant or Frakes to the officer during this period. Defendant could not have been prejudiced if he remained silent, nor could he have been prejudiced by any statements he might have made which were not used against him. See State v. Elledge, 78 N.M. 157, 429 P.2d 355 (1967).

Defendant's second point is that the trial court erred in admitting into evidence the black and white photographs of the motel rooms showing the blood on the pillow and bed clothes, the bathroom floor, the lavatory, and spots thereof on the bedroom walls, a lamp shade and a night stand beside the bed.

The objection was that their " * * * only purpose * * * " was to " * * * arouse the prejudice of the jury, * * * " and they were cumulative. It is true the manager of the motel and a police officer had already testified as to the presence of the blood and the general condition of the rooms. However, the fact that there had been verbal descriptions of the presence of the blood and the condition of the rooms did not make the photographs inadmissible, even though to some extent they were cumulative. State v. Johnson, 57 N.M. 716, 263 P.2d 282 (1953); State v. Horton, 57 N.M. 257, 258 P.2d 371 (1953); State v. Jones, 52 N.M. 118, 192 P.2d 559 (1948). The photographic evidence constituted visual explanations of the testimony of the witnesses and was corroborative of this testimony. The photographs were admissible for these purposes. State v. Sedillo, 76 N.M. 273, 414 P.2d 500 (1966); State v. Johnson, supra. The question of admissibility of photographic evidence, objected to as being inflammatory of the passions and prejudices of the jury, is largely one of discretion to be exercised by the trial court. State v. Sedillo, supra; State v. Johnson, supra; 2 Jones, Evidence § 442 (5th Ed. 1958); 3 Jones, Evidence § 625 (5th Ed. 1958). Ordinarily, the trial court's discretion thereon will not be disturbed on appeal. State v. Sedillo, supra; State v. Johnson, supra. We find no reason to

question the trial court's ruling in admitting the photographs into evidence.

■ Defendant's third point is that he was prejudiced by a reference in the testimony of Frakes to the fact that defendant had been previously confined in a penitentiary.

On cross-examination of Frakes by defendant's counsel, it was brought out that Frakes had first told the police he had struck Mr. Olafson with the hammer. On re-direct examination by the Assistant District Attorney, the following questions were asked of this witness and he made the following answers:

"Q. By whom were you threatened?

"A. The defendant.

"Q. How were you threatened by Mr. Webb?

"A. I was told if we were in trouble over this he wasn't going back to the penitentiary again."

No objection was made to any of these questions or the answers thereto, and the re-direct examination continued. It is the last answer above quoted which defendant now contends was prejudicial and requires a reversal.

The only other possible reference to defendant's prior criminal record was his own response to a question asked by his own attorney on direct examination. He had testified that he had been taken to Sergeant Roach's office at some time between 7:00 and 7:30 a. m. on March 6, 1969. The question then asked of him and the material portion of his answer thereto were as follows:

"Q. When you got down to Sergeant Roach's office, what happened there?

"A. The first thing that happened down there was Captain Chappell asked me what is your parole officer's name, and when I told him, * *."

As already stated, no objection was made to the statement by Frakes that defendant had said " * * * he wasn't going back to the penitentiary again." If defendant considered this prejudicial, he should have objected and given the trial court an opportunity to strike the answer, or to otherwise correct the claimed error. He saw fit to make no objection thereto, and he cannot now be heard to complain for the first time on appeal. State v. Holden, 45 N.M. 147, 113 P.2d 171 (1941); State v. Wallis, 34 N.M. 454, 283 P. 906 (1929); State v. Everitt, 80 N.M. 41, 450 P.2d 927 (Ct.App. 1969); State v. Gutierrez, 79 N.M. 732, 449 P.2d 334 (Ct.App.1968).

Defendant's final point is his claim of error on the part of the trial court in not directing a verdict of acquittal at the close of the State's case. He relies upon the following language from State v. Hovey, 80 N.M. 373, 456 P.2d 206 (Ct.App.1969):

" 'Where circumstantial evidence alone is relied upon for a conviction such evidence must be incompatible with the innocence of the accused upon any rational theory and incapable of explanation upon any reasonable hypothesis of the defendant's innocence. * * *

" 'It is not enough that the testimony raise a strong suspicion of guilt. It must exclude every reasonable hypothesis other than the guilt of the defendant. * *' "

Even if we were to concede the correctness of defendant's contention as to the insufficiency of the circumstantial evidence to support the conviction, this concession would not aid defendant. Besides the circumstantial evidence, we have defendant's own confession that he and Frakes planned the battery upon Mr. Olafson, and, according to his confession, tossed a coin to see which of them should wield the hammer in striking the victim. Frakes also testified as to their plans to commit the battery, and as to the actual striking of the victim by defendant.

The judgment and sentence should be affirmed.

It is so ordered.

SPIESS, C. J., and WOOD, J., concur.