## STATE v. DAVIS.

1. The charge in this case when considered as a whole, and the language excepted to, when considered in the connection in which used, was not a charge upon the facts, but only a statement of the testimony applicable to the questions at issue.
2. Where the judge plainly instructs the jury that the facts are exclusively with them, he need not, in stating the testimony, reiterate the same instruction.
3. If testimony is incorrectly stated to the jury, or reference to some material testimony omitted in the charge, the proper remedy is to call the attention of the judge to such error or omission at the time, or at least to move for a new trial before the Circuit Court upon that ground.
4. The presumption of insanity arising from a committal to a lunatic asylum, may not be rebutted *only* by evidence of a discharge from the asylum.
5. Where the fact of the homicide is admitted and the only defence is insanity, the judge did not err in saying to the jury, "The diabolical homicide is not denied, provided the person who did it is morally responsible."
6. Points not made by exceptions, but urged in argument, considered *in favorem vitae.*

Before HUDSON, J., Anderson, October, 1886.

This was a prosecution against Jasper Davis for murder. The opinion states the case.

*Mr. G. E. Prince,* for appellant.

*Mr. Orr,* solicitor, contra.

January 5, 1888. The opinion of the court was delivered by

MR. JUSTICE MCIVER. Under an indictment for murder the defendant was convicted, and appeals upon the several grounds hereinafter set out. The person killed was the defendant's own wife, and the circumstances immediately preceding and attending the homicide, as appearing in the testimony, which is fully set out in the "Case," are in brief as follows:

The defendant had been for some time separated from his wife, she, with her children, being in the habit of sleeping at the house

of her brother, who lived but a short distance from her own home. On the night before the homicide was committed, the prisoner went to the house where his wife and children were sleeping, saying to her brother that he wanted to talk "about living together again," to which the brother replied, in substance, that they could have lived together if he (the prisoner) had lived right. The prisoner then went into the room where his wife and children were in bed, but whether he had any, or if so what, conversation with his wife, the testimony does not disclose. The prisoner remained at the house until nearly daylight the next morning, when he left, going in an opposite direction from the house of his wife. Very early in the morning the wife left with her children for her own house, and on the road she was fired at and killed by her husband, who was concealed in the bushes at the side of the road. The gun used by him belonged to one of his relatives with whom he had been staying, and was taken from the relative's house the night before the homicide was committed. As soon as the gun was fired the prisoner made his escape, and after eluding a vigilant search made by the neighbors for several days, the prisoner surrendered himself to some of his relatives, who carried him to jail.

The only defence relied upon was insanity, and upon this subject the testimony tended to show that on June 10, 1884, the defendant was committed to the lunatic asylum by the judge of probate, after the usual examination, one of the physicians who participated in the examination testifying, in substance, that he then thought the defendant was suffering either from hypochondria or monomania, induced by dyspepsia or indigestion, and that the main reason for sending him to the asylum was, that he could there get regular attention and have his diet controlled; that he "bent the law a little in sending him to the asylum." After remaining in the asylum from four to six months, the defendant returned and continued to live in the neighborhood, staying sometimes with one of his relatives and sometimes with another, until September 26, 1886, when the homicide was committed—a period of nearly two years. There was no evidence that he had been formally discharged from the asylum as cured of his malady; the only testimony upon that subject being the statement made to one

of the witnesses by the defendant, after the homicide was committed: "That he had never been dismissed from the asylum as yet; that he was out on six months' trial;" together with the circumstance that he had been allowed to go at large in the community without any restraint for nearly two years. There was also testimony adduced as to the conduct and demeanor of the defendant after his return from the asylum.

The grounds of appeal are as follows: "1. Because his honor erred in charging the jury that the presumption of insanity was destroyed by defendant's release from the asylum. 2. Because his honor erred in charging upon the facts as follows: 'That he (the defendant) says he was released from the asylum on a trial of six months,' when the defendant had not testified in the case. 3. Because his honor erred in charging: 'That if he (meaning the defendant) was reported to have been cured, then that would begin the presumption of sound mind'—this being calculated to mislead the jury, as there was absolutely no testimony showing or tending to show he had been by the authorities of the lunatic asylum reported as cured. 4. Because, there being no evidence as to how or why the defendant came to be out of the asylum, the following charge of his honor was calculated to mislead the jury, and was therefore error, to wit: 'You take all the facts, the fact of his being sent to the asylum and of his being released, and that destroying the presumption of unsound mind; that puts him upon the footing of other men.' 5. Because his honor erred in assuming in his charge to the jury that the defendant had been released from the lunatic asylum. 6. Because the presumption of insanity could not be overcome by anything short of positive proof of his final discharge from the asylum, and his honor erred in not so charging."

It will be observed that these exceptions proceed mainly upon the idea that the Circuit Judge in his charge to the jury has violated section 26 of art. IV. of the Constitution, which reads as follows: "Judges shall not charge juries in respect to matters of fact, but may state the testimony and declare the law." This provision of the constitution has been construed in several cases by this court; and in *State* v. *White*, 15 *S. C.*, 381, where the previous cases were cited, it is said "that the real object of this

clause of the constitution is to leave the decision of all questions of fact to the jury exclusively, uninfluenced by any expressions of opinion by the judge. * * * The judge is not expected to confine himself to a mere statement or repetition of the testimony as it was delivered, but may place it before the jury in the order in which it relates to the propositions which it is adduced to support or contradict, by pointing out the questions of fact which arise, and calling the attention of the jury to the evidence applicable to such questions, yet he should carefully avoid expressing any opinion which he may have formed from the facts, leaving it for the jury to draw their own conclusions unbiassed by any impressions which the testimony may have made upon the mind of the judge."

Testing the charge in this case by the rule thus laid down, we are unable to discover wherein it has been violated. The entire charge, as taken down by the stenographer, together with the corrections made therein by the Circuit Judge in his report,[1] is incorporated in the "Case," and a careful examination of it, as a whole, fails to disclose any ground for the several allegations of error. As we have frequently had occasion to say, it will not do to take up detached extracts from the charge, but it must be considered as a whole, especially must the language objected to, be considered in the connection in which it was used, and not separated from the context. So considering the charge in this case, it will be found that the language specially objected to was used merely as a statement of the testimony applicable to the questions which had been pointed out as arising in the case, and this, clearly, cannot be regarded as any violation of the constitutional provision.

The main, and in fact the only, issue really involved in the case was, whether the defendant was insane at the time the homicide was committed. Upon this issue the jury were properly instructed that all persons are presumed to be sane until the contrary appears, and then the jury were told that the fact that the

---

[1] To print the charge as reported by the stenographer would manifestly do Judge Hudson great injustice. He says in his report that his charge was not correctly taken down. I have therefore thought it better to omit it from the report of the case.—REPORTER.

defendant had been committed to the lunatic asylum would be
sufficient to rebut such presumption in this case.   The jury were
then further instructed that after insanity was once established
to their satisfaction, the presumption would be that such a condi-
tion of the mind would continue until it in turn was rebutted by
the evidence, and their attention was called to the several facts
and circumstances relied on to rebut such presumption.   We do
not see that the Circuit Judge anywhere expressed or even inti-
mated any opinion as to any of these matters ; but, on the con-
trary, he simply collated the facts and circumstances appearing
in the testimony applicable to the issues involved, leaving it to
the jury to decide for themselves each question of fact as it arose.
We do not deem it at all necessary that a Circuit Judge after
having once instructed the jury that "the facts are for you exclu-
sively, and of these facts you are the sole judges," as was done
in this case, should, when stating the testimony applicable to the
several issues involved, precede each statement with an ·"if"—
·"if they believed each of the facts so stated."

Some of the exceptions seem to imply that the Circuit Judge
misstated the testimony in some particulars.   If this were so
(though we find no evidence of it), it would constitute no error of
law, of which this court could take cognizance.   If testimony is
incorrectly stated to the jury, or reference to some material testi-
mony omitted in the charge, the proper remedy is to call the
attention of the judge to such error or omission at the time, or at
least to move for a new trial before the Circuit Court upon that
ground.   *State* v. *Jones*, 21 *S. C.*, 596.

In answer to the sixth exception it would be sufficient to say
that there was no request to charge the proposition there insisted
upon.   But even if such a request had been submitted, we are not
prepared to say that there would have been any error of law in
refusing it.   We could not say as matter of law that where
insanity has once been established, by the fact that the person in
question has been committed to the lunatic asylum. the presump-
tion that the same state of mind continues to exist until it has
been overthrown by proof of a final discharge from the asylum.
Such a presumption may be rebutted by any satisfactory evidence
of restoration to sanity, and there may be evidence of such resto-

ration quite as satisfactory as a formal discharge by the authorities of the asylum.

There are two other specifications of error relied on in the argument here, which, though not covered by the exceptions, may, under the rule laid down in the case of the State v. McNinch (12 S. C., 89), in favorem vitae, be considered by this court. The first is that the Circuit Judge violated the rule in telling the jury what was the motive of the defendant in taking the life of his wife, and the second is in using this language in his charge to the jury: "The diabolical homicide is not denied, provided the person who did it is morally responsible." The first has, in effect, already been disposed of by the remarks hereinbefore made as to the statement of the testimony by the judge, which was manifestly not designed or calculated to convey to the jury any impressions which the testimony had made upon the mind of the judge, but simply a statement of what had been testified to.

As to the second, it was clearly not the expression or intimation of any opinion formed by the judge as to any of the issues of fact involved. The only issue really raised in the case was as to the insanity of the accused and the character or degree of the homicide was not, and could not have been, brought in question. In this respect the case differs very materially from the case of State v. White (15 S. C., 381), relied on by the counsel for appellant. There the character and degree of the homicide was one of the issues involved and when the judge told the jury "that no doubt a cruel, brutal, and savage homicide had been committed," he expressed in very plain and forcible terms his opinion as to one of the issues involved. Here, however, it was wholly immaterial to the only defence interposed what was the character of the homicide; indeed, the fact that it was attended with circumstances of atrocity might be regarded, as is often urged, as a circumstance in favor of the view upon which the entire defence was based—that the perpetrator of an offence so atrocious must have been insane.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, and that the case be remanded to that court, for the purpose of having a new day assigned for the execution of the sentence heretofore imposed.