GEORGE DEEB v. STATE.

158 So. 880.

En Banc.

Opinion Filed January 12, 1935.

*Forsyth Caro, B. K. Roberts* and *Philip D. Beall,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

ELLIS, P. J.—George Deeb, alias George Deebs, was indicted in Escambia County, Florida, for killing Creely Godwin. The offense charged was murder in the first degree. The means alleged to have been used was that of shooting with a pistol. The crime was alleged to have been committed on April 19, 1933; the place, Escambia County.

On March 23, 1934, Deeb was brought into open court in Escambia County as a prisoner. He had not been arraigned upon the indictment.

Mr. Philip D. Beall, counsel for Deeb, suggested in writing to the court that on June 10, 1933, Deeb was adjudged by the County Judge of Leon County, Florida, to be insane and was committed to the State Hospital for the Insane at Chattahoochee, Florida; that Deeb remained in the custody of the Superintendent of the Hospital in the department maintained for the custody of the criminal insane until March 17, 1934, when upon an order of the Circuit Judge of the Second Judicial Circuit he was delivered to Charles J. Deeb, as guardian, for the purpose of placing the insane man in a Sanitarium in South Jacksonville, Florida, for treatment. At that institution George Deeb, the accused was taken into custody by the Sheriff of Escambia County and transported to that county.

It was also stated on information and belief that prior to the "time charged in the indictment" Deeb was confined in a sanitarium or asylum because of his mental condition. Counsel therefore suggested that Deeb was "not of sound mind or of sufficiently sound mind to be arraigned on said indictment or trial thereon."

The Judge of the Court appointed a Commissioner to examine such witnesses as the defendant might produce, reduce their testimony to writing and return the same to the Court.

A change of venue was moved by counsel and granted and a special term of the Court for Okaloosa County to which the cause was transferred was called for April 25, 1934. The order was made April 18, 1934. Prior to that date on March 30, 1934, the court made an order deciding that Deeb was "sufficiently sane to enter upon the trial of the case" and on the same date he was arraigned and being represented by counsel pleaded not guilty to the indictment.

There was a verdict of manslaughter and judgment was entered upon the verdict. To that judgment a writ of error was taken.

The first four assignments of error present the question of the propriety of requiring the accused to plead to the indictment and go to trial because of his deranged condition.

In the case of State, *ex rel.* Deeb v. Fabisinski, 111 Fla. 454, 152 South. Rep. 207, in which the alleged mental condition of the accused was under consideration in one phase of the prosecution for the offense charged we said that: "Both at common law and by statute in many jurisdictions if at any time while criminal proceedings are pending against a person accused of crime, whether before or during or after the trial, the trial court either from observation or upon the suggestion of counsel has facts brought to its attention which raise a doubt of the sanity of the defendant, the question should be settled before further steps are taken. The method of settling the question is within the discretion of the trial court."

The principle was also stated that a "person while insane cannot be tried, sentenced, nor executed. It is obvious that

if a person is tried while insane his insanity may disable him from making a rational defense."

While the method adopted by the trial court for settling the question of the mental incapacity of one accused of crime to intelligently plead to the indictment or rationally conduct a defense because of the disease of insanity may be entirely discretionary with the trial court, whether his conclusion as to the fact of the defendant's ability to rationally conduct his defense is reviewable by an appellate court is questionable.

The correct rule was announced by the Supreme Court of West Virginia in the case of State v. Harrison, 36 W. Va. 729, 15 S. E. Rep. 982, 18 L. R. A. 224. In that State a statute provided that no one while insane should be tried for crime and if the court should "see reasonable ground to doubt his sanity, the trial shall be suspended until a jury inquire of his sanity." The court said that feature of the statute was merely declaratory of the common law. Authorities including 4 Bl. Com. 24; 2 Bishop Crim. Proc., and 1 Chitty Crim. Law were cited to show that while at common law in capital cases it was the more usual course, when it appeared that the sanity of the accused was doubtful, to inquire touching it by a jury, yet the inspection of the accused by the judge without a jury was allowable. The court pointed out, however, that the statute required that the question of the insanity of the accused should be tested by a jury when the court sees reasonable ground to doubt the sanity of the accused. It is the judicial conscience of the judge alone that is to be satisfied. In that case the court refused to call a jury to determine the question and the Supreme Court did not hold such action reversible, but the court said: "From the letter of our statute, and the reason and public policy pertinent to the subject, the decision of

the judge must have a very weighty, if not decisive, influence; *though in case* of *abuse* of discretion, I should think it remediable." The opinion written by Mr. Justice BRANNON and no views to the contrary were expressed.

As the preliminary inquiry touching the insanity of the accused is a method merely to inform the conscience of the court and as the insanity *vel non* of the accused may be inquired into by the jury on the trial of the issue of not guilty. See Southworth v. State, 98 Fla. 1184, 125 South. Rep. 345, Johnson v. State, 57 Fla. 18, 49 South. Rep. 40. It would seem that the preliminary order of the court touching the defendant's mental capacity to plead and rationally conduct his defense would not be reviewable as the defendant may have the question of his sanity submitted to the jury on the issue of not guilty.

Mr. Justice STRUM said, in a concurring opinion in Southworth v. State, *supra,* that: "A question of present sanity at the time of the trial, however, is not to be confused with an issue of sanity at the time of the commission of the offense." It might be added that neither should the question be confused with that of the convict's sanity when the judgment is to be enforced. In the latter case, if after conviction the convict loses his senses he has no legal right to demand or compel an inquiry into his sanity. The plea, or suggestion, at that stage is only an appeal to the humanity of the court to postpone the punishment until a recovery takes place or as a merciful dispensation. The rights of the prisoner as an offender on trial for an offense are not involved. See *Ex Parte* Chesser, 93 Fla. 590, 112 South. Rep. 87.

But before conviction his situation as to his rights are different. He is not in law regarded as an offender, only as one accused of crime. The law throws around him the

protecting shield of a presumption of innocence and he cannot be forced into a lawful trial if he by reason of insanity is unable to intelligently plead or rationally conduct his defense. The degree of insanity with which the accused may have been afflicted when the alleged offense was committed and which would work an acquittal is of a higher or greater degree of dementia than that degree of dementia which would incapacitate a person to plead or to rationally conduct a defense on a murder charge.

It is conceivable that a person may at the time of committing an act be conscious of its nature and character as a social offense and yet if called upon to plead to the criminal accusation and rationally conduct a defense he might be utterly incapable by reason of progressing primary dementia to do so. He might mislead his counsel as to facts, misinform them as to his relations with other actors in the legal drama and be utterly unreliable as a witness in his own behalf.

The same humanity of the law which will stay the execution of one convicted of crime exists to prevent one being tried for crime where insanity in the accused *vel non* is the question. Where in one case the execution of the convict would be a brutal, uncivilized performance, in the other it would be a malicious mockery of judicial procedure.

In the case of Williams v. State, 45 Fla. 128, 34 South. Rep. 279, the court considered whether it was an abuse of discretion on the part of the Circuit Judge to refuse to submit the question of the defendant's insanity to a jury.

If the court will consider whether a circuit judge abused a discretion in the matter of determining the mode by which he may inform his conscience as to the insanity of the accused it would seem to follow that the appellate court will review the evidence on the question of the insanity of the

accused to determine whether it was sufficient to inform the judicial conscience definitely when the court had doubt as to the sanity of the accused sufficient to make an investigation.

A discussion of the testimony which was taken before and at the trial on the question of the sanity of the accused would be no more satisfying to the conscience nor edifying to the bar than the statement that it was or was not sufficient to establish the sanity of the accused. If there were any sufficient grounds for doubt as to the sanity of the accused he would not have been compelled to plead and enter upon the trial of his case.

It is unnecessary to discuss the reasonableness and humanity of the rule which forbids the putting of one on trial for a capital case whose mentality by reason of insanity in some form is so low that he cannot intelligently plead nor rationally defend himself at the trial. It is sufficient that the rule exists.

In the case at bar the accused had been adjudged to be insane and was confined in the criminal ward or place set aside for the confinement of the criminal insane at the State Hospital for the Insane. He had not been discharged as cured or improved. He was released to a guardian only that he might be taken to a sanitarium where he could be specially treated for the peculiar type of insanity from which he suffered. He was taken from that place by the Sheriff without any order or certificate from the hospital authorities that Deeb was either well or improved. Therefore when Deeb was called to plead to the indictment he was not presumed to be a sane person; on the other hand, he was presumed to be insane because a person adjudged to be insane is presumed to continue as such until it is shown that sanity has returned. See Jones Co. v. State, 122 Me.

214, 119 Atl. Rep. 577, and extensive note with many citations in 7 A. L. R. 588.

In that situation the evidence adduced should have established the fact of Deeb's return to a sane condition before he could be called upon as a sane person to plead to the indictment and defend the case brought against him.

In the view we have of the evidence taken upon the question prior to the arraignment and trial of Deeb, so far from establishing that sanity had returned, confirmed the order of his commitment to the Hospital for the Insane as an insane person whose particular form of dementia made it prudent not only in his own interest, but in the interest of the community that he should be confined, his movements watched and his person guarded to prevent either injury to himself or others.

The particular type of mental disease from which he suffers, according to the physicians, is dementia præcox, paranoidal type. It may possibly be cured, not probably, according to one physician. It is progressive and grows constantly worse usually. He may at one moment be apparently normal and at the next be mentally convulsed by a mere incident of great or small significance.

We are of the opinion that the court erred in requiring the accused to plead to the indictment and attempt to defend his case.

The trial and judgment therefore were erroneous and the judgment is reversed.

TERRELL and BUFORD, J. J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.