247 P.2d 165

**STATE v. FOLK.**
No. 5341.

Supreme Court of New Mexico.
Aug. 5, 1952.

McAtee & Toulouse, Albuquerque, for appellant.

Joe L. Martinez, Atty. Gen., Hilario Rubio, Ass't Atty. Gen., Frank B. Zinn, Ass't Atty. Gen., for appellee.

COORS, Justice.

The defendant was found guilty of charges of rape and contributing to the delinquency of a minor, and sentenced to serve not less than ten years nor more than fifteen years on the count for rape and five years on the count for contributing to the delinquency of a minor, the sentences to run concurrently. While various claims of error are made in this appeal, and some of them with considerable merit, in the view we take of the case, it is necessary to consider only one of the issues raised, to-wit: That the trial court committed reversible error in refusing to consider or submit to the jury the question whether the defendant was sane or insane at the time of trial.

Our statute, Sec. 42–1303, N.M.S.A. 1941 Comp., provides:

"Whenever it shall appear, upon the trial of any person, charged with any crime or misdemeanor, that such person was insane at the time of the commission of the same, and such person shall be acquitted, the jury shall be required to find, specially, whether such person was insane at the time of the commission of such offense, and to declare whether he was acquitted by them

on the ground of such insanity, and if they shall so find and declare, the court, before whom the trial was had, shall have power to order such person to be kept in strict custody, in such place and in such manner as to the said court shall seem fit, at the expense of the county in which the trial was had, so long as such person shall continue to be of unsound mind. The same proceedings shall be had if any person indicted for an offense, shall, upon arraignment, be found to be a lunatic or habitual drunkard, by a jury lawfully empaneled for the purpose, or if upon the trial of any person so indicted, such person shall appear to the jury charged with such indictment to be a lunatic, in which case the court shall direct such finding to be recorded, and may proceed as aforesaid."

The facts necessary for a determination of the issue here raised are as follows:

On July 29, 1949, an information was filed in the District Court of Sandoval County, New Mexico, accusing the defendant in two counts of rape and contributing to the delinquency of a minor on the 19th or 20th of July, 1949. By stipulation the venue was changed from Sandoval to Bernalillo County and the defendant waived his right to a preliminary hearing. Thereafter an insanity proceeding was instituted (being Cause No. 1200 in the District Court of Bernalillo

County) against the defendant upon affidavit of the assistant district attorney who assisted in the trial of the present case. The defendant, after due hearing, was adjudged insane on November 1, 1949, by the district judge who heard the present case and by him committed to the state insane asylum. On March 2, 1950, the defendant was released by the superintendent of the asylum on parole to a guardian for 90 days. It is to be noted that he was not discharged from the asylum as one whose sanity was recovered, and his release on parole was apparently effected under the provisions of Sec. 37–220, N.M.S.A.1941 Comp., the pertinent provisions of which are as follows:

*"Discharge of patients.*—The district judge of the county from which any patient has been committed by his order or the medical superintendent of the New Mexico Insane Asylum by his written certificate filed with the secretary of the directors of said asylum, or its other duly authorized agent, may discharge any patient except one held upon an order of a court or judge having criminal jurisdiction in an action or proceeding arising out of criminal offense, at any time, as follows:

\*   \*   \*   \*   \*   \*

"2. When Discharge Not Detrimental to Public Welfare. Any patient who is not recovered, but whose discharge, in the judgment of the superintendent, will not be detrimental to the public welfare, or injurious to the patient. \*   \*   \*

"3. Parole. The superintendent may grant a parole to a patient under general conditions prescribed by the directors of the Insane Asylum of New Mexico.

"4. Patients Charged with Crime. A patient committed to the insane asylum who, at the time of such commitment, was charged with crime in any county of the state or who was serving a sentence of imprisonment imposed by any court in the state, must upon the certificate of the medical superintendent that such person has recovered, be redelivered to the sheriff of the proper county, or to the warden of the state penitentiary, or to such other person as the court having jurisdiction of the offense shall direct, to be dealt with according to law.

\*   \*   \*   \*   \*   \*

"6. Certificate of Discharge. When any person is discharged from the New Mexico Insane Asylum, as recovered, there shall be issued by the medical superintendent, or his duly authorized assistant, a certificate of discharge which shall provide for the discharge of such person from said asylum, as recovered, and that said person is restored to the full status of a sane person. \*   \*   \*"

While this statute seemingly does not purport to authorize the release on parole of patients charged with the commission of criminal offenses, that procedure was followed in this instance and the validity of the release in this manner is not here in question.

No further action was taken by the district court in Cause No. 1200, the insanity proceeding, and the defendant was proceeded against under the information heretofore described. On March 27, 1950, he entered pleas of not guilty and not guilty by reason of insanity. The cause came on for hearing on that date and immediately after the witnesses were sworn and prior to the giving of any testimony counsel for the defendant orally moved for continuation of the case in the following language:

"Mr. McAtee: At this time, if the Court please, I move that this cause be continued on the ground that the defendant Carl J. Folk had been adjudged insane and committed to the New Mexico State Hospital at Las Vegas by this Court; that he has been paroled from that Institution but has not yet been restored his civil rights; that the said Carl J. Folk was insane and unable to assist counsel in the preparation of his defense."

In response to this motion the record reads:

"The Court: Overruled, motion for continuance denied."

The taking of testimony was then commenced and after three witnesses had testified for the state, defendant's counsel moved further proceedings be suspended because of the then insanity of the defendant and the motion was overruled. We quote:

"Mr. McAtee: A motion was made before the case began this morning to this effect: We move that the proceeding be suspended due to the insanity of the defendant; that this Court on November 1, 1949, in Cause No. 1200 Insanity adjudicated the said Carl J. Folk as insane and incompetent and he has not at this time been adjudicated as competent; that due to the insanity and incompetency of the said Carl J. Folk, he has been mentally incapable of rendering to his attorney such assistance to the proper defense the information preferred against him demands. We further move that the case be suspended on the ground that it is the established common law that a person while insane cannot be tried and Mr. Carl J. Folk is at this time still insane in so far as the Court and State Insane Asylum are concerned.

"The Court: Overruled. I will permit you to try to impeach that witness if you don't abuse her. I won't permit any abuse. Call the jury."

At a further point in the trial the defense moved the introduction in evidence of the file in the insanity proceeding and the file in an incompetency proceeding likewise handled by that court wherein a guardian had been appointed for the estate of the defendant and the following colloquy was had:

"Mr. McAtee: Defendant's Exhibit 1, we desire to have admitted as it shows that he was adjudged to be insane and incompetent in proper form and manner, and that he was, on the 1st day of November, 1949 adjudged by this Court as insane and committed to the New Mexico Insane Asylum at Las Vegas, New Mexico, and, upon the further ground that it ties into our motion which we made at the opening of this trial, that one deemed to be found insane is presumed to continue * * * . (Interrupted.)

"Mr. Reidy: We object to it as irrelevant and immaterial; too remote in time concerning the issue in this case. What these files disclose on November 1st 1949 is not controlling. This case happened about July 19th and 20th, 1949.

"Mr. McAtee: In answer to the District Attorney's objection, the very insanity proceeding here; as this Court knows * * * (Interrupted.)

"Mr. Reidy: Your Honor, I would like to object to any statement he is attempting to make before the jury. I would like to have the jury excused if counsel wants further argument.

"The Court: I will hear further argument in the absence of the jury. With reference to the tenders, at this time, particularly with reference to Defendant's Exhibit 2, being a file in the matter of Carl J. Folk, an incompetent person: The jury is instructed that in Cause No. 42988—on February 9, 1940, the District Court for this County through an order signed by Judge Arledge found that grounds existed for the appointment of a guardian for the estate of Carl J. Folk. I think that is the only material part of that file. Defendant's Exhibit 2 may not be admitted but the jury may consider that as evidence. With reference to Defendant's Exhibit 1, being File Numbered 1200, Insanity, in the District Court of this County, the Court on November 2, 1949, Judge Arledge presiding in that hearing stated: 'I think I am fully aware and advised in this case. I will commit this man to the State Insane Asylum at Las Vegas and when a guardian for his estate is appointed, I will award an appropriate amount for his support. Thereafter if the family desires to transfer him to some other hos-

pital, I will consider that on proper application.' In committing this man the Court further said: 'The defendant is charged with a serious crime before this Court. In spite of the testimony of all these psychiatrists here today, this committment is made without prejudice to that criminal complaint. I find this man insane as of today. The Court makes no finding as to what this man's condition was mentally on July 19th, 20th, 1949, the day of this alleged crime. The District Attorney is cautioned and enjoined that if this man is turned loose upon society again, the criminal prosecution will be indicated. Court is now in recess.' I will hear any argument of counsel as to any admission of any other portion of those files. Gentlemen of the jury, you are now excused * * *.

"Mr. McAtee: I show you File No. 42988. One of the causes for paresis as stated by medical authorities is overtaxation, mental worries and exhaustion and we have listed in the report of the Guardian the amount of defendant's obligations; encumbrances of Mr. Folk. There is quite an extensive list, what we have alleged. (Referring to Defendant's Exhibit 5.) In Court File No. 1200, In Re: Insanity of Carl J. Folk, we don't know what the State is going to bring forth in the way of rebuttal evidence. We have the testimony of psychiatrists at the time,

which the law required be transcribed evidence under the law of this State. There was a regular proceeding before this Court. The evidence is there, direct and cross-examination of the psychiatrists before the Court. The Court will note that counsel for the incompetent asked each of the psychiatrists or expert witnesses that if they were aware that he was accused of committing a violent crime and the witnesses answered they were and they were asked, in their opinion, if the man was insane and incompetent in that case and the witnesses answered that he was insane and incompetent. That he was tried before the Court, and furthermore I haven't tried to embarrass the district attorney's office in this case or any other case, but the fact is that Mr. Reidy himself signed the affidavit of insanity. We did not have a psychiatric examination of Mr. Folk on the 20th, 21st or 22nd day of July.

"The Court: The Court has said: In the insanity matter, Cause No. 1200 marked Defendant's Exhibit 1 for identification, I will refuse to admit its introduction, the legal reason being that I concede the law of the State of New Mexico to be that an insanity proceeding is primarily to lock up a person who is alleged to be dangerous to either himself or to others. It isn't an adversary proceeding in a criminal case in

which the State is a party plaintiff accusing a party defendant. Accordingly, it isn't an identical proceeding between the parties. I can't conceive the evidence of one being admissible on a trial of this nature. Counsel have cited no law on this point. I think that my ruling may be purely academic for the reason that defense counsel can use this file and the transcript of testimony therein to examine any witness that appears, for the purpose of impeachment but at this time I will rule that testimony can be used for impeachment purposes only in accordance with the rules of impeachment. With reference to Defendant's Exhibit 2, the State is not a party to that action in any manner. I see no reason for introducing the file at all. If counsel wants to frame certain hypothetical questions, I will consider them at the time they are framed and presented. * * *"

It is not here contended the previous insanity proceeding is res judicata or conclusive on the issue of the defendant's mental condition at the time of the trial. We have included the arguments of counsel and the remarks of the court upon this subject, however, not for the purpose of ruling on the evidentiary admissibility of the insanity and incompetency proceedings as such, but rather to show the defense counsel tied in to some extent at least his earlier motions at this later stage of the trial. We take this opportunity to say, however, that we recognize that in most jurisdictions there is no objection to the introduction of the record of an insanity proceeding or one for the appointment of a guardian or committee to handle the estate of an incompetent person where it is sought to establish that person as a defendant in a criminal prosecution is either insane at the time of trial, or was insane at the time the offense was committed, if the earlier proceeding were had at a time not too remote, which question would, of course, go to its weight and not to its competency. See 5 Wigmore, Evidence Sec. 1671(a) (3rd ed.) and Weihofen, Insanity As A Defense In Criminal Law, ch. 5, sec. 3, at p. 249, and authorities cited in those texts.

In only two cases has our court been called upon to rule with reference to the general problem here raised. In the first of these, Territory v. Kennedy, 15 N.M. 556, 110 P. 854, the defendant was tried and found guilty of murder in the first degree. The defense was insanity at the time of commission of the act; but, during the course of the trial the issue as to defendant being insane at the time of trial was raised. Although it does not appear how the issue was raised in the opinion, our examination of the transcript filed on that appeal shows that during the course of examination of a physician the question was posed whether

the defendant was sane at the time of trial. After discussion between counsel and the court the question was withdrawn—but the question had been raised in the mind of the trial judge, and on conclusion of the cross examination of the witness, the court, on its own motion excused the jury and questioned the witness. After court was reconvened the court made the statement it was agreed by counsel and the court that the issue of present sanity is admissible in the proceeding as well as the inquiry as to sanity or insanity at the time of the commission of the offense. Upon conclusion of the testimony the jury was instructed on the question of whether or not the defendant was presently insane. On appeal the defendant was granted a new trial on other grounds, however, it is significant to note the procedure of the trial court upon the question being raised as to defendant's sanity at the time of trial—which procedure was specifically approved in the opinion. We quote therefrom as follows:

"As bearing on that question, however, testimony was offered that he was taken, at the time of the trial, insane. That led the trial judge to state, in the presence of the jury, in substance, that the law did not tolerate the trial of an insane person and if he was then insane the trial could proceed no further at that time. He then sent out the jury and examined witnesses as to the sanity of the defendant but came to the con-clusion that the question should be submitted to the jury with the other questions in the case, recalled the jury and proceeded with the trial.

"The course which the trial court pursued in submitting to the jury, with the other issues in the case, the question whether the defendant was then insane, is, we think, required by our statute, Sec. 1929, C.L.1897, (Sec. 42–1303, quoted supra) when the question is first raised after the trial has begun.

"In Youtsey v. United States, 6 Cir., 97 F. 937, in an opinion which exhaustively reviews the decisions on the subject, Lurton, then Circuit Judge, declared that a trial judge might, in his discretion, determine the question for himself or 'submit it to the jury along with the principal issue requiring a special verdict, as to the competency of the defendant to understand the proceedings and intelligently defend himself.' 'But if the jury find insanity to exist,' he continues, 'a verdict upon the issue of not guilty should be quashed,' citing Reg. v. Berry, 12 B.Div. 447, and 2 Bish.Crim.Proc., Sec. 666. That the conclusion was, however, based on the Common Law and in this jurisdiction would have to be modified to conform to the statute referred to."

The second of the New Mexico cases touching upon this subject arose upon the

following facts: The defendant was tried and convicted by the District Court of Dona Ana County upon a charge of murder in the first degree and sentenced to be hanged. He appealed to this court and we affirmed the conviction. Thereafter the Governor granted a reprieve and the defendant was moved from the Dona Ana County jail and placed in the state penitentiary. Then a writ de lunatico inquiriendo was issued from the District Court of Santa Fe County to inquire into the sanity of the defendant and he was decreed by judgment of that court to be insane. Following this proceeding the defendant filed a petition in this court setting up the adjudiction of insanity and requested a stay of execution. This court conducted an inquiry and in its opinion, In re Smith, 25 N.M. 48, 176 P. 819, 822, 3 A.L.R. 83, stated, among other things:

"All the courts hold, so far as we are advised, that the common law forbids the trial, sentencing, or execution of an insane person for a crime while he continues in that state. Many of the states have statutes to that effect. * * *"

From these cases and our statute, Sec. 42–1303, supra, we derive the following rules for decision: No particular mode or manner of procedure must be followed in raising the issue of the insanity of a defendant existing at the time of arraignment, trial, judgment or execution, so long as there is a sufficient showing to create a reasonable doubt as to the sanity of the accused; and upon the issue being raised the accused is by right under our statute, Sec. 42–1303, supra, entitled to have the jury pass upon it.

In Weihofen, Insanity As A Defense In Criminal Law, pp. 333, 334, the common law rule is stated as follows:

"It has long been the rule of the common law that a person cannot be required to plead to an indictment or be tried for a crime while he is so mentally disordered as to be incapable of making a rational defense, and he cannot be adjudged to punishment or executed while he is so disordered as to be incapable of stating any reasons that may exist why judgment should not be pronounced or executed. If the court, at any of these stages, has a reasonable doubt whether the defendant is so mentally disordered, it should suspend the criminal proceedings and hold an inquiry on the matter, with or without a jury, and if the defendant be found to be so disordered, the court should postpone the criminal proceedings until he recovers his sanity, and order him to be in the meantime confined as an insane person.

"The reasons usually given why such mental disorder is held to require the suspension of criminal proceedings against the person have been summa-

rized as follows: (Quoting from Jordan v. State, 124 Tenn. 81, 135 S.W. 327, 34 L.R.A.,N.S., 1115) 'It would be inhuman, and to a certain extent a denial of the right of trial upon the merits, to require one who has been disabled by the act of God from intelligently making his defense to plead or be tried for his life or liberty. There may be circumstances in all cases of which the defendant alone has knowledge, which may prove his innocence, the advantage of which, if insane to such an extent that he did not appreciate the value of such facts, or the propriety of communicating them to his counsel, he would be deprived.' The same has been said by common law writers since the time of Coke. (Citing 3 Coke Inst. 6: 1 Hale P.C. 35; 4 Bl. Comm. 24, 395.) * * *"

Accord: 14 Am.Jur., Criminal Law, Sec. 44, p. 801; Annotation 142 A.L.R. p. 961, et seq.; 44 C.J.S., Insane Persons, § 127, p. 283, 284; 23 C.J.S., Criminal Law, § 940, p. 233.

The rule of the common law is preserved in this state by Sec. 42–1303, supra, subject to the modification as noted in Territory v. Kennedy, supra, that the trial judge may no longer decide the matter himself, but must, if doubt exists, submit the matter to the jury. Indeed, the compulsion behind the common law rule is as strong today as ever.

A man should not arbitrarily or capriciously be denied upon his day in court a trial in which he may competently bring to his defense any fact of which he may be apprised; and if he suffers from mental disorder at that time so as not to understand the nature of the proceedings against him, or lacks the ability to communicate to his counsel any elements in his defense, he is denied that right.

The trial judge is not totally without discretion in this matter, even under our statute. It is his province to rule whether or not a reasonable doubt can be said to exist as to the sanity of an accused, and this determination will not be lightly overturned. All the authorities recognize the issue must be raised in good faith and supported by a showing sufficient to create a reasonable doubt as to the sanity of an accused.

While the motion for continuance is not entirely free from criticism, doubtless the defense counsel took into consideration in making the motion that the judge hearing the present case had, less than five months before, regularly adjudged the defendant insane and committed him to the State Insane Asylum, and the further fact the insanity proceeding was instituted by the assistant district attorney appearing for the state in the present case, and, therefore, assumed he need not tender a more formal and fully supported motion. We view such an assumption as not unreasonable in these circumstances.

In addition to this motion, however, was the motion for a suspension during trial and the attempted introduction in evidence of the record of the insanity proceeding and that for appointment of a guardian for the estate of the accused. Furthermore, four psychiatrists testified upon the trial that in their opinion the defendant was insane when examined by them five months before and was afflicted with a mental disorder which in the general course grows more acute with the passage of time. There was some disagreement in their diagnoses of the defendant. All of the psychiatrists felt upon first examination that he was suffering from paresis. Negative results from tests of spinal fluid led one of them to believe the defendant had cerebral arteriosclerosis psychosis, but the others still felt he was paretic. Whereas the prognosis for paresis is "poor," that for cerbral arteriosclerosis psychosis is "much more poor." We might also note the district attorney himself referred to the defendant in his argument to the jury as a "sex maniac." The word "maniac" is defined by Webster's New International Dictionary, (2d ed.) as "A raving lunatic; a madman."

Under these facts it was unquestionably an abuse of the trial court's discretion to refuse to inquire into the present mental condition of the defendant and submit the issue to the jury. In fact, the prior adjudication of insanity and the release from the insane asylum not as restored to sanity, but merely on a limited parole, raised a presumption that the defendant was insane. This presumption may be rebutted, but until that has been done, he cannot be found either guilty or innocent of the crime charged. Deeb v. State, 118 Fla. 88, 158 So. 880; Wilhite v. State, 158 Ark. 290, 250 S.W. 31; People v. Maynard, 347 Ill. 422, 179 N.E. 833; State v. Davis, 27 S.C. 609, 4 S.E. 567; Ashley v. Pescor, 8 Cir., 147 F.2d 318; Robinson v. Johnston, D.C., 50 F.Supp. 774; Honaker v. Cox, D.C., 51 F.Supp. 829. As to the effect of the presumption generally, see annotations in 7 A.L.R. 568; 68 A.L.R. 1309; and 142 A.L.R. 961, at page 992, et seq.

As the other claimed errors may not be repeated in the event of another trial, they will not be discussed.

For the court's error in failing and refusing to submit to the jury the question of defendant's insanity at the time of trial, the case is reversed and remanded with directions to the district court to grant the defendant a new trial.

It is so ordered.

LUJAN, C. J., and SADLER, McGHEE and COMPTON, JJ., concur.