290 P.2d 440

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**James Larry UPTON, Defendant-Appellant.**
**No. 5912.**

Supreme Court of New Mexico.
Sept. 23, 1955.

Rehearing Denied Nov. 21, 1955.

Wilson P. Hurley, Morgan S. White, Albuquerque, for appellant.

Richard H. Robinson, Atty. Gen., Fred M. Standley and W. R. Kegel, Ass't Attys. Gen., for appellee.

KIKER, Justice.

This is an appeal from a conviction of murder in the first degree for which a sentence of death by electrocution has been imposed. Appellant bases his appeal upon three grounds which will be set out and determined after the facts are briefly stated.

On September 10, 1954, James Larry Upton, the appellant, was hitchhiking from Nowata, Oklahoma, to Los Angeles, California. At about eight-thirty that morning he was picked up on the outskirts of Amarillo, Texas by an Air Force Corporal, Donald T. Dilley, who was driving to Salt Lake City, Utah, by way of Albuquerque, New Mexico. Upton and Cpl. Dilley con-

tinued on Highway 66 toward Albuquerque through the course of the morning, stopping once to change a flat tire, and again, so that Cpl. Dilley might purchase gasoline. At about one-thirty in the afternoon, when they were approximately four and one-half miles east of Albuquerque on Highway 66, Upton drew a pistol from a package that he had on the seat beside him and ordered Cpl. Dilley to stop the car. Instead of stopping, Cpl. Dilley speeded up. Upon a further warning from Upton, Cpl. Dilley grabbed the keys from the ignition switch and threw them from the car's window. Then he stopped the car across the highway pointing south with the rear wheels on the highway divider and the front of the car in the east bound traffic lane. Upton shot Cpl. Dilley four times with a .38 caliber revolver. Upton got out of the car and Cpl. Dilley, still alive, slumped behind the wheel. The car began to roll south, off the highway, carrying Cpl. Dilley with it, and came to rest in an arroyo some forty feet from the highway. Cpl. Dilley was thrown out and lay on the left side of the automobile. Upton remained on the highway and waved various vehicles on, then he fled up a canyon north of the highway where he was arrested about two hours later.

Appellant's first contention is that the court below erred in refusing his motion for a mistrial, which motion was based on an alleged statement by a witness for the state to the effect that the appellant had been arrested for other crimes prior to the crime for which he was being tried. This argument constitutes an attack upon the accuracy of the record.

Appellant made no direct attack upon the record as, for example, by recalling the witness and questioning him as to what he had said; but simply sets forth in his brief his recollection of the witness's answer, as follows:

"A. In explaining different situations he laughed or made light of them—he—not necessarily concerning this incident, but other things. I asked him about his life; *the other situations* in which he had been arrested * * * and * * *" (Emphasis by the court.)

The record, however, shows the witness making the following statement:

"A. In explaining different situations he laughed or made light of them—he—not necessarily concerning this incident but other things, I asked him about his life; *the situation* in which he had been arrested * * * and * * *" (Emphasis by the court.)

The record furnishes no foundation for appellant's motion; to hold with him we would have to repudiate the record and accept appellant's recollection of the witness's statement. Language used

by us in State v. Beal, 1944, 48 N.M. 84, 88, 146 P.2d 175, 178, is pertinent here:

"The veracity of neither court nor counsel is * * * involved. It is purely a matter of correctly recalling what transpired, yet so grave a case as this may not be decided upon the memory of those present at the trial. We are bound to consider the case, as presented here, upon the record made in the trial of the case."

We have said many times in varying situations that we are limited to a consideration of the certified record. See Waldo v. Beckwith, 1854, 1 N.M. 97, 102; Pino v. Hatch, 1855, 1 N.M. 125, 131; Sanchez v. Luna, 1857, 1 N.M. 238, 245, 246; State v. Smith, 1918, 24 N.M. 405, 407–408, 174 P. 740; State v. Edwards, 1950, 54 N.M. 189, 191–192, 217 P.2d 854. It follows that we must presume that record to be true and accurate. Adoption of a contrary rule would disrupt the orderly administration of justice without enuring to the slightest substantive benefit of anyone. Since the record is conclusive on us and there is no basis in the record for appellant's motion for a mistrial we cannot say that the trial court erred in denying that motion.

Appellant's second contention is that the trial court erred in the admission of two enlarged photographs of the deceased. One of the photographs is a view of the back of deceased's naked body showing the wounds after they had been cleaned. The other is a view of the front of decedent's body from the hips up showing the wounds before they were cleaned. These photographs were admitted shortly after the admission of a photograph of the deceased, taken while he was alive, dressed in the uniform of the Air Force. Appellant urges that these photographs are inherently, and by virtue of the sequence of their admission, gruesome and inflammatory and rendered the jury emotionally incapable of hearing the case impartially; he urges that his judicial admission of the nature and location of the wounds and his offer to stipulate that deceased was shot in the back dissipated the grounds for admission of the photographs; he urges that the photographs are of slight probative value and are cumulative.

The controlling principle may be stated as follows: Photographs which are calculated to arouse the prejudices and passions of the jury and which are not reasonably relevant to the issues of the case ought to be excluded.

We have examined the photographs involved in the instant case; we do not find them gruesome or inflammatory nor do we think the sequence of their introduction lent to them qualities which they do not inherently possess.

A judicial admission has been said to do away with the necessity of proof by

the benefiting party. 9 Wigmore on Evidence, Sec. 2591 (3d Ed.1940), see also the same work Sections 1058 and 2588. Appellant here made a judicial admission of the nature and location of the wounds and offered to stipulate that the deceased was shot in the back. Appellant did not, by this admission, relieve the state of its entire burden of proof, for appellant still stood on his plea of "Not Guilty and Not Guilty By Reason of Insanity". We think the photographs were admissible for the purpose of clarifying and illustrating the testimony of witnesses, for proving the corpus delicti, and for the purpose of corroborating the identity of the deceased. We have held that photographs which may be characterized as cumulative evidence are properly admitted if they serve to corroborate other evidence. State v. Jones, 1948, 52 N.M. 118, 123, 192 P.2d 559; State v. Horton, 1953, 57 N.M. 257, 262–263, 258 P.2d 371; State v. Johnson, 1953, 57 N.M. 716, 721, 263 P.2d 282. In the latter case we also held, 57 N.M. at page 721, 263 P. 2d at page 285, that,

"The admission of photographs rests largely in the discretion of the trial court and ordinarily his decision will not be disturbed."

For the foregoing reasons we cannot say here that the lower court abused its discretion in the admission of these photographs.

Appellant's third contention is:

"That the defendant was wrongfully brought to trial when his mental condition at the time of trial was of such a nature, based on the uncontradicted testimony of a qualified psychiatrist, as to render him incapable through mental defect of conducting his defense."

Our statute, Section 41–13–3, NM SA 1953, as construed in Territory v. Kennedy, 1910, 15 N.M. 556, 110 P. 854, and in State v. Folk, 1952, 56 N.M. 583, 247 P.2d 165, shields and protects persons who are insane. Proof of defendant's "insanity" or "mental disorder" is necessary in order to bring the defendant within the shelter of the statute. Once this condition: insanity, has been established, our statute offers protection to defendants in two situations.

One: Where the defendant is insane at the time of the commission of the crime. The proper inquiry here is the M'Naghten rule as extended by State v. White, 1952, 58 N.M. 324, 330, 270 P.2d 727, 731:

" ' "The jury must be satisfied that, at the time of committing the act, the accused, as a result of disease of the mind * * * (a) did not know the nature and quality of the act or (b) did not know that it was wrong or (c) was incapable of preventing himself from committing it." ' "

This inquiry goes to the responsibility of the accused for his alleged criminal act and may affect the decision as to accused's guilt or innocence.

■ Two: Where the defendant is insane at the time of arraignment, trial, judgment or execution. The proper inquiry here is:

"Has the defendant capacity to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to such proceedings, and to make a rational defense?" Weihofen, Mental Disorder as a Criminal Defense, at page 431; see also State v. Folk, cited supra, 56 N.M. at page 592, 247 P.2d 165.

This inquiry goes solely to the propriety of proceeding against accused during the existence of such condition.

■ It is on Number Two, insanity at the time of trial, that appellant rests his contention. We stated the universal rule applicable here in In re Smith, 1918, 25 N.M. 48, 56, 176 P. 819, 822, 3 A.L.R. 83:

"All the courts hold * * * that the common law forbids the trial * * * of an insane person for a crime while he continues in that state. * * *"

The reason for this rule is set out in Jordan v. State, 124 Tenn. 81, 135 S.W. 327, 34 L.R.A.,N.S., 1115, which we quoted approvingly in State v. Folk, cited supra, 56 N.M. at page 592, 247 P.2d at page 170:

"'"It would be inhuman, and to a certain extent a denial of the right of trial upon the merits, to require one who has been disabled by the act of God from intelligently making his defense to plead or be tried for his life or liberty. There may be circumstances in all cases of which the defendant alone has knowledge, which may prove his innocence, the advantage of which, if insane to such an extent that he did not appreciate the value of such facts, or the propriety of communicating them to his counsel, he would be deprived."'"

In the instant case appellant, prior to trial, moved for a continuance on the ground that he was presently insane; the trial court after hearing testimony, denied this motion. We address ourselves, first, to the question: Did the trial court abuse its discretion in denying the motion for a continuance?

In State v. Folk, cited supra, 56 N.M. at page 592, 247 P.2d at page 171, we said:

"It is * * * (the trial court's) province to rule whether or not a reasonable doubt can be said to exist as to the sanity of an accused, and this determination will not be lightly overturned. All the authorities recognize

the issue must be raised in good faith and supported by a showing sufficient to create a reasonable doubt as to the sanity of an accused." (Parenthetical insertion by the court.)

The only testimony offered in support of the motion for a continuance was that of a doctor of medicine specializing in nervous and mental disease. The pertinent portion of this testimony is set out below.

"Q. You believe that this man can tell the truth in order to help himself? A. I don't believe he can tell the truth at all to help himself or to injure himself. He is a pathological liar. He won't tell the truth even if it would help him.

"Mr. Hurley: I have no further questions.

"The Court: What is the basis of your motion?

"Mr. Hurley: That he is a pathological liar, Sir; that he has a mental disease and he can't tell the truth even if it would help him and for that reason it is impossible for him and he cannot conduct his own defense.

"The Court: Is this man insane at this time, Doctor Stewart? A. No, Sir, he is not.

"The Court: Is his mind so affected that he can't cooperate with counsel and prepare his defense? A. He can cooperate with him and he will cooperate with him when it is to his comfort, but he asked me a different type of question. This man can cooperate but he sees no reason why he should because he is a psychopathic—he is a constitutional psychopathic inferior person. He's born with a defect of moral appreciation here—his conflict with society is where it comes in. He sees no reason—he is right and society is wrong. He is perfectly sane and competent under the eyes of the law and in any psychiatric examination. * * *"

"The Court: Very well. I will deny the motion and proceed with this trial in the big courtroom and we will commence impaneling a jury * * *"

 It is clear from the testimony above quoted that appellant failed to establish the condition requisite to bring himself within the protection of the statute: insanity. To the court's question "Is this man insane at this time, Doctor Stewart" the doctor responded with an unequivocal "No, Sir, he is not." It is, therefore, unnecessary to attempt to reconcile the doctor's two seemingly contradictory state-

ments regarding defendant's ability to tell the truth and thus aid in his own defense. Appellant's argument here is in the nature of an attempt to secure the application of the language of the rule of inquiry without bringing defendant within the statute by proving his insanity; the statute is not susceptible to such interpretation. It is to be noted that appellant does not attack the constitutionality of the statute. We conclude that the trial court did not abuse its discretion in denying appellant's motion for a continuance.

▆▆▆▆▆ We are, further, of the opinion that appellant has placed himself in such a position that he cannot be heard to complain of the trial court's denial of his motion for a continuance.

Section 41–13–3, NMSA 1953, as construed in Territory v. Kennedy, cited supra, and State v. Folk, cited supra, outlines the rights of defendants claiming insanity at the time of trial:

1.) No particular method of bringing the question of defendant's present sanity to the attention of the trial court is required. 2.) Once the issue has been raised the trial court is under a duty to inquire into the matter. 3.) The trial court must rule as to whether a reasonable doubt exists as to the sanity of the accused. 4.) If the trial court rules affirmatively the issue must be submitted to the jury for determination.

▆▆▆▆▆ In the instant case the issue was brought to the attention of the lower court prior to commencement of trial by motion for a continuance on the ground that accused was presently insane and so unable to make a rational defense. The lower court heard expert testimony on the issue and denied the motion, thus in effect ruling that no reasonable doubt existed as to the present sanity of the accused. Having rule negatively, there was no duty on the trial court to submit the issue to the jury. Let us assume for the moment, however, that which we have already determined to the contrary, that is: that the trial court was in error in denying appellant's motion for a continuance, that there was established a reasonable doubt as to appellant's present sanity. The only absolute right the accused would then have had under our statute as construed, would have been to have the question presented to the jury. *At the close of the trial in the instant case the lower court offered to send to the jury the question of the present sanity of the accused; accused specifically requested that the question not be submitted to the jury.* Thus the trial court made available to the accused every right guaranteed him—and more. The accused, having refused the trial court's offer, cannot be heard now to complain.

The judgment of the lower court will be affirmed, and It Is So Ordered.

LUJAN and McGHEE, JJ., concur.

SADLER, J., and COMPTON, C. J., concurring specially.

SADLER, Justice (concurring in the result but dissenting in part).

I concur in the foregoing opinion, except in one particular, namely, the approval therein of the extension by the majority in State v. White, 58 N.M. 324, 270 P.2d 727, of the McNaghten rule, the time honored test of criminal responsibility, when insanity is a defense. The so-called McNaghten, or "right and wrong," test had received our approval in Territory v. Kennedy, 15 N.M. 556, 110 P. 854; State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1, and State v. Folk, 56 N.M. 583, 247 P.2d 165. As stated in my dissenting opinion in State v. White, supra, whatever the difference between the extension of that test made in State v. White and the generally repudiated doctrine of "irresistible impulse," it is so shadowy as to be beyond lucid statement or clear differentiation.

The "right and wrong" rule, the ability to distinguish the one from the other and to comprehend that the act about to be committed is wrong, has been tested in the crucible of time and experience and found not wanting. I am reluctant to see its effect destroyed by the so-called extension. I look forward to the day when we shall return to it. If a man knows right from wrong and deliberately does the wrong, he is responsible. It should be no defense that an irresistible impulse moved him so to act, or to plead that, though knowing the act to be wrong, he was helpless to avoid doing it. Annotations 18 L.R.A. 224 and 43 L.R.A.,N.S., 150. If these observations will hold open the door against the day we are moved to favor again the old test, they have not been in vain.

Since the approval given the extension mentioned in the White case in no manner affects the result reached herein, I join in an affirmance of the judgment reviewed.

COMPTON, C. J., concurs.

On Motion for Rehearing

PER CURIAM.

Point one of the motion was fully covered in the opinion at pages three and four.

Point two of the motion was fully covered in the opinion at pages five, six and seven.

Regarding Point Three of the motion: On September 20, 1954, defendant entered a plea of not guilty. The case was called for trial on October 11, 1954, the district attorney being present and defendant being present with his attorneys. Both the state and the defendant by their respective attorneys announced that they were ready for trial whereupon defendant, by his at-

torneys, moved for a continuance on the ground of incompetency of defendant. The court, without a jury, then heard testimony of Dr. A. B. Stewart with direct examination by defendant's attorney. The doctor declared the defendant was not insane. Defendant offered no further testimony and the court overruled the motion. Thereupon defendant changed his plea so that it became a plea of not guilty and not guilty by reason of insanity. Throughout the record, except for testimony of the officers connected with the arrest of defendant and those who had him in custody, there is much evidence which evidently is intended to show that defendant was in such condition that he had not been since his early years, mentally sound. His mother was called to testify and did testify of the hardships he had suffered as a boy and the peculiarities of his conduct. It was shown that he had been frequently incarcerated both in reform school and in California penal institutions and several times had been sent from such institutions to another for observation as to his mental condition. The climax of all this came when Dr. Jacobsen testified. This psychiatrist was called as a witness for the defendant and testified on examination of the court:

"The Court: Doctor, I believe your diagnosis was—constitutional psychopathic personality.

"A. That is right.

"The Court: What is your finding, with psychosis or without psychosis?

"A. Without psychosis.

"The Court: That is a psychiatric way of saying the person is sane?

"A. That is a term we use to show that he does not possess psychotic mental illness, that is correct."

Then the doctor testified:

"Mr. Tackett: Doctor, as a result of your examination could you tell the jury and Court whether or not the defendant is sane or insane as of today?

"A. I feel * * * my feeling would be that this individual within the meaning of the terms, sanity or insanity; that this individual is sane and competent; knows the difference between right and wrong and that he possesses, again, the abstract ability to act upon that recommendation. * * *

"The Court: Doctor, would you say that the defendant Upton was sane or insane on September 10, 1054?

"A. I would say he was sane at that time."

We quote again:

"The Court: Doctor, this defendant, you stated, knows the difference between right and wrong; does he have the mental capacity to adhere to the right, if he desires?

"A. I would say that he does, your Honor.

"The Court: Is he working under any uncontrollable impulse?

"A. No."

The whole of the doctor's testimony indicates that defendant was sane at the time of the homicide and at the time of trial.

There is much evidence in the record to justify the court in instructing the jury as to insanity at the time of trial, in fact it is seriously doubted that defendant could at any time before any jury have had any more or better evidence than appears in this record to support the theory of present insanity.

 Doubtless it is true that if the court had been in doubt as to defendant's sanity when that question was first presented, he might have submitted the question of the present sanity to a jury with nothing else to consider. There is no requirement of law that the judge should do so and since he concluded, on such evidence as defendant offered, that no doubt of the sanity of defendant existed he had the authority to overrule the motion. As said in the original opinion his offer, because of the state of the record, to submit to the jury the question of the present sanity of defendant was more than defendant was entitled to have. The defendant expressed the desire not to have such instructions given and the court, accordingly, instructed on insanity at the time of the homicide.

The motion for rehearing should be and is denied

It is so ordered.

COMPTON, C. J., and LUJAN, SADLER, McGHEE and KIKER, JJ., concur.